S95A0212. ALLEN v. THOMAS
(458 SE2d 107)

THOMPSON, Justice.

We granted a certificate of probable cause to appeal in this habeas corpus case, asking the parties to address the following questions:

"1. What is the appropriate procedure for challenging the validity of an agreement between a criminal defendant and a district attorney in which the defendant agrees never to seek any form of relief from life imprisonment?

"2. Can a defendant waive the right to seek any form of

tions, p. 32 (July 1991).

relief from life imprisonment, including habeas corpus relief, as part of an agreement to plead guilty to criminal charges?"

We answer these questions as follows: A defendant can waive the right to seek relief from life imprisonment as part of an agreement to plead guilty to criminal charges. The waiver is constitutional and enforceable; it does not contravene public policy. The defendant can challenge the validity of the agreement via habeas corpus; however, the scope of the inquiry is limited to the knowing and voluntary nature of the agreement.

Allen was charged with two counts of kidnapping, two counts of armed robbery and two counts of murder. He entered into a written agreement with the state in which the state agreed to waive the death penalty and recommend a life sentence on each count of the indictment and Allen agreed he would serve the remainder of his life in prison and "never apply, orally or in writing, for parole, commutation of his sentence, reprieve, or any other form of relief from life imprisonment." The agreement concludes: "[Allen] enters into this contract with full awareness of what he is doing and he will not later attempt to rescind, void or revoke it." It was signed by the district attorney, Allen, and his attorneys.

That same day, Allen pled guilty to all six counts of the indictment and was sentenced to six consecutive life terms. Thereafter, Allen filed a petition for habeas corpus, asserting the agreement was "unconstitutional and invalid." The habeas judge denied relief.

1. In determining whether habeas corpus provides an available remedy in any given case, we must keep in mind that

it was the intent of the legislature . . . to make the remedy more readily available to prisoners resorting to the Georgia courts and to facilitate a determination in each case . . . of the legality or illegality of the imprisonment.

*Johnson v. Caldwell*, 229 Ga. 548, 550 (192 SE2d 900) (1972). With the intent of the legislature in mind, we conclude that our habeas corpus procedure enables Allen to challenge the validity of his agreement with the state. See OCGA § 9-14-42 (a); *Parris v. State*, 232 Ga. 687 (208 SE2d 493) (1974).

2. In *Thomas v. State*, 260 Ga. 262 (392 SE2d 520) (1990), Thomas entered into an agreement with the state in which he waived his right to appeal in exchange for the state's waiver of the death penalty. Thomas appealed anyway and this Court dismissed, holding that a criminal defendant's waiver of his right to appeal did not violate public policy, and was constitutional and enforceable. In so holding, this Court observed that waivers of the right to appeal have been

upheld even where death sentences were imposed. Id. at 264 (citing *Gilmore v. Utah*, 429 U. S. 1012 (97 SC 436, 50 LE2d 632) (1976) and *Whitmore v. Arkansas*, 495 U. S. 149 (110 SC 1717, 109 LE2d 135) (1990)).

We can see no reason to distinguish between waivers of the right to appeal and waivers of the right to seek post-conviction relief from life imprisonment. In each instance, the waivers foster the interests of the state and the defendant in finality. "Only by holding the defendant and the state to the bargain is finality achieved." *Thomas v. State*, supra at 264.

We hold, therefore, that the agreement between Allen and the state is neither unconstitutional nor invalid. On the contrary, the agreement comports with public policy; and it is enforceable.

This is not to say that Allen cannot challenge the knowing and voluntary nature of the agreement. After all, a waiver of a right to appeal or to seek post-conviction relief must be knowing, intelligent and voluntary. Id.

A review of the record demonstrates that Allen entered into the agreement knowingly, intelligently, voluntarily, and with the able assistance of counsel. It follows that Allen is bound by the agreement and that he cannot seek relief from his life sentence.

*Judgment affirmed. All the Justices concur, except Benham, P. J., and Sears, J., who dissent.*

SEARS, Justice, dissenting.

Based on constitutional, statutory, and public policy considerations that embody this state's historic reverence for the Great Writ of Habeas Corpus, I would invalidate Allen's agreement with the state not to seek habeas corpus relief as part of an agreement to plead guilty to criminal charges.

1. For its holding that Allen's agreement is valid, the majority relies on *Thomas v. State*,[1] in which we held that there were no constitutional, statutory, or public policy prohibitions that precluded Thomas's agreement with the state to waive his right to appeal in exchange for the state's agreement not to seek the death penalty.[2] The majority applies *Thomas* to this case, finding no reason to distinguish between waivers of the right to appeal and waivers of the right to seek habeas corpus relief. I conclude, however, that considerations that are unique to habeas corpus relief preclude the application of *Thomas* to this case.

First, the right to seek relief under the "Great Writ" has always had constitutional moorings in Georgia, whereas the right to appeal

---

[1] 260 Ga. 262 (392 SE2d 520) (1990).
[2] *Thomas*, 260 Ga. at 263-264.

does not. From the time "Georgia was founded as a 'New Eden' to embody the humanitarian visions of its creator, General James Oglethorpe,"[3] this State has highly prized the Great Writ as "one of the basic procedural safeguards against tyranny,"[4] and since 1777 has protected access to the writ through our state constitutions.[5] Currently, Art. I, Sec. I, Par. XV of the 1983 Georgia Constitution provides that "[t]he writ of habeas corpus shall not be suspended unless, in case of rebellion or invasion, the public safety may require it."

Moreover, consistent with this constitutional directive, our habeas corpus statutes contemplate only a waiver of particular issues that one may raise on habeas and not a waiver of the right to bring the writ itself. For instance, OCGA § 9-14-48 (d) provides that to avoid waiving the right to raise issues on habeas corpus a petitioner must comply with applicable procedural rules at trial and on appeal. Even then, however, § 9-14-48 (d) permits a petitioner to overcome a procedural bar if she can show cause and prejudice or a miscarriage of justice. The language of the miscarriage of justice provision is of particular significance. It provides that "[i]n all cases habeas corpus relief shall be granted to avoid a miscarriage of justice."[6] The phrase "[i]n all cases" in that Code section conveys a strong statement of public policy that the writ of habeas corpus shall always be available to correct miscarriages of justice. Further, even the filing of one habeas petition does not preclude a defendant from filing a second petition; it merely subjects her to a procedural bar as to certain issues.[7]

This state's high regard for the writ of habeas corpus reflects the ideal that a free people in a democratic society must have a means of self-correction that may not be available to less free people. That public policy requires the Great Writ to be available to correct substantial denials of constitutional rights, particularly in cases of miscarriages of justice, seems self-evident. For instance, in a death penalty prosecution, even if a defendant believes that an eyewitness has mistakenly identified her as the murder suspect, she might plead guilty to obtain a life sentence and thereby avoid the risk that a jury will believe the eyewitness and impose the death penalty. If the eyewitness later became certain that he was mistaken as to the identity of the defendant, public policy would surely decry any agreement that precluded the defendant from seeking habeas relief on the ground a

---

[3] Wilkes, A New Role for an Ancient Writ: Postconviction Habeas Corpus Relief in Georgia (Part I), 8 Ga. L. Rev., pp. 313, 333 (quoting in part 1 Stevens, History of Georgia 65, 67-68 (1847)).

[4] Wilkes, supra at 333.

[5] Wilkes, supra at 313-315.

[6] OCGA § 9-14-48 (d).

[7] OCGA § 9-14-51.

miscarriage of justice had occurred.[8]

In addition, there is another reason to distinguish between a waiver of the right to direct appeal and a waiver of the right to seek habeas corpus relief. If a defendant agrees to waive only her right to a direct appeal, she still may rely on habeas corpus to correct any "substantial denial of [constitutional] rights,"[9] including any miscarriages of justice, that might have led to his conviction. On the other hand, a defendant who waives not only her right to direct appeal but also her right to habeas relief has no safety mechanism by which to correct such errors.

2. Our recent decision in *Bank South v. Howard*[10] also mandates the conclusion that the agreement in this case is invalid. In that case, we construed Art. I, Sec. I, Par. XI of our Constitution, which provides, in relevant part, that the

> right to trial by jury shall remain inviolate, except that the court shall render judgment without the verdict of a jury in all civil cases where no issuable defense is filed and where a jury is not demanded in writing by either party.

We held that prelitigation waivers of the right to trial by jury violated public policy because the applicable statutory and constitutional provisions "contemplate the pendency of litigation at the time of the waiver";[11] because of the "magnitude of the rights involved";[12] and because of the "probability of abuse."[13] The reasoning of *Bank South* applies with equal force to this case.

First, the constitutional language protecting the right to file a writ of habeas corpus is at least as strong as the language protecting the right to trial by jury.

Second, the magnitude of rights involved in a habeas action are at least as great if not greater than those affected by the right to trial by jury, and the abuses that can arise from waivers of habeas relief that are negotiated before pleading guilty are as severe as those that can arise from prelitigation waivers of a right to trial by jury.

Finally, a waiver of the right to seek habeas relief is more severe than a waiver of the right to have a trial by jury. When a party waives

---

[8] A defendant in such a situation would not be able to obtain relief under the majority opinion since the defendant would have entered the plea agreement knowingly, voluntarily, and intelligently.

[9] OCGA § 9-14-42 (a).

[10] 264 Ga. 339 (444 SE2d 799) (1994). Although I dissented to our decision in *Bank South*, that decision now represents the law of this state.

[11] *Bank South*, 264 Ga. at 340.

[12] Id.

[13] Id.

a right to trial by jury, she does not waive the right to trial entirely — that party can still advocate her position before a trial judge. But when a defendant waives her right to file the Great Writ, she is completely precluded from having her concerns heard either by a judge or a jury.

For the foregoing reasons, I dissent to the majority opinion in this case.

I am authorized to state that Presiding Justice Benham joins in this dissent.

DECIDED JUNE 12, 1995 —
RECONSIDERATION DENIED JUNE 30, 1995.

Jody Edward Allen, *pro se.*

*Michael J. Bowers, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Peggy R. Katz, Assistant Attorney General,* for appellee.