[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
11/24/98
THOMAS K. KAHN
CLERK

No. 96-9050

D.C. Docket No. CV-194-020

JODY E. ALLEN,

Petitioner-Appellant,

versus

A.G. THOMAS, WARDEN

Respondent-Appellee

Appeal from the United States District Court
for the Southern District of Georgia

**(November 24, 1998)**

Before BLACK and CARNES, Circuit Judges, and FAY, Senior Circuit Judge.

CARNES, Circuit Judge:

This case presents the question of whether appellant Jody Allen waived his right to seek federal habeas corpus review of his state court conviction when, as part of a plea bargain, he agreed not to seek "parole, commutation of his sentence, reprieve, or any other form of relief from life imprisonment." Because we conclude that Allen did not thereby knowingly and intelligently waive his right to seek federal habeas corpus review of his conviction, we reverse the district court's judgment and remand for consideration of Allen's petition.

## I. BACKGROUND

In 1984, Jody Allen and co-conspirator Goss Brooks kidnapped, robbed, and murdered George and Euclid Alread. After the grand jury of McDuffie County, Georgia indicted Allen for two counts each of kidnapping, armed robbery, and murder, the district attorney announced his intention to seek the death penalty in the case.

Seeking to save Allen's life, his court-appointed attorneys began discussions with the district attorney about the possibility of a plea bargain for a lesser sentence. The district attorney rejected their proposal that Allen plead guilty in exchange for a sentence of life imprisonment. At that time Georgia law did not provide for a sentence of life imprisonment without the possibility of parole, and the district attorney was reluctant to agree to any sentence which left open the possibility of Allen being released. After additional negotiation, the two sides eventually entered into a written plea agreement designed to spare Allen's life and resolve the district attorney's concern about him getting out of prison. The plea agreement was drafted by Allen's attorneys.

In essence, the plea agreement provided that the State would not seek the death penalty in the case, but would instead recommend a life sentence as to each count against Allen. In return, Allen agreed not only to plead guilty but also to waive the right to pursue at least some forms of relief from his sentence. In that regard, the plea agreement stated as follows:

> Jody Edward Allen agrees that he will never apply, orally or in writing for parole, commutation of his sentence, reprieve, or any other form of relief from life imprisonment. He understands this means he will be sentenced to serve the remainder of his natural life in the penitentiary.

In consideration of the State waiving the death penalty, Jody Edward Allen also hereby gives up his right to ask for the Superior Court Sentence Review Panel to review any sentence imposed upon him. He hereby states that the sentence of life imprisonment for his participation in the criminal acts is not excessive.

The plea agreement authorized the district attorney and his successors "to enforce this contract by specific performance or injunctive relief at any time during the lifetime of Jody Edward Allen," and stated that Allen had entered into the contract "with full awareness of what he was doing, and he will not later attempt to rescind or revoke it." It is undisputed, however, that Allen was never advised by his attorneys, or anyone else, that he was waiving his right to seek federal habeas relief from his conviction or sentence, or that he even knew he had a right to seek such relief.

On February 14, 1985, the McDuffie County court accepted the plea agreement, entered judgment accordingly, and sentenced Allen to six consecutive life sentences. Allen did not file a direct appeal. Eight years later, however, he filed an application for a state writ of habeas corpus, raising numerous claims relating to his conviction and sentence. The state habeas court held that Allen had waived his right to state habeas corpus review by entering into the plea

4

agreement. Furthermore, the court concluded that such a waiver was constitutionally permissible, because "there is no federal bar to a defendant in a non-capital case waiving his right to [state] habeas corpus review."

The Georgia Supreme Court affirmed that decision, reasoning that Allen's waiver of his right to seek state habeas relief "is constitutional[,] enforceable[, and] does not contravene public policy." Allen v. Thomas, 265 Ga. 518, 519, 458 S.E.2d 107, 107 (1995). Although the court acknowledged that "[t]he defendant can challenge the validity of the agreement via [state] habeas corpus" by contesting "the knowing and voluntary nature of the agreement," Allen, 265 Ga. at 519, 458 S.E.2d at 108, it concluded that Allen had entered into the agreement "knowingly, intelligently, voluntarily, and with the able assistance of counsel." Id. at 520, 458 S.E.2d at 108. Thus, it held that "Allen is bound by the agreement and . . . cannot seek relief from his life sentence." Id. at 520, 458 S.E.2d at 108. Two dissenting justices disagreed, stating that such a waiver was not permissible under state law. See id. at 520-23, 458 S.E.2d at 108-110.

On January 20, 1994, Allen filed a petition pursuant to 28 U.S.C. § 2254, seeking federal habeas corpus relief[1] and claiming 1) the state trial court lacked jurisdiction and venue over the kidnapping and armed robbery charges; 2) the indictment was defective; 3) his guilty plea was not knowingly, intelligently, and voluntarily entered; and 4) his counsel was ineffective. The magistrate judge issued a report and recommendation that did not reach the substantive allegations of Allen's petition, but instead concluded that Allen had waived his right to seek federal habeas relief by entering into the plea agreement.

The magistrate judge reasoned that permitting waiver of the federal habeas remedy as part of a plea bargain did not contravene any federal constitutional or statutory provision or public policy. Although he stated that such a waiver must be knowing, intelligent, voluntary, and made with effective assistance of counsel, the magistrate judge found that all of those requirements had been satisfied. The district court judge adopted the report and recommendation, and denied Allen's federal habeas petition. Allen appeals that denial.

## II. DISCUSSION

[1]Because Allen's federal habeas corpus petition was filed before the effective date of the Antiterrorism and Effective Death Penalty Act, this case is governed by the law as it existed prior to that Act.

Because there are no published decisions addressing plea-bargained waivers of the right to seek federal habeas corpus review, we draw upon decisions involving waiver of other rights. There are a multitude of decisions involving waiver of the right to counsel, none of which is more often cited for the definition of a valid waiver than Johnson v. Zerbst, 304 U.S. 458, 58 S. Ct. 1019 (1938). There, the Supreme Court held that "[a] waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege." Id. at 464, 58 S.Ct. at 1023. In Carnley v. Cochran, 369 U.S. 506, 516, 82 S. Ct. 884, 890 (1962), another waiver of counsel case, the Court elaborated on Johnson, stating that: "Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which shows, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver."

In Boykin v. Alabama, 395 U.S. 238, 242-43, 89 S. Ct. 1709, 1712 (1969), the Court took the standard it had enunciated for waiver of the right to counsel and applied it generally to other rights given up in a guilty plea, including the right against self-incrimination, the right to trial by jury, and the right to confront one's accusers. Boykin held that for a guilty plea to be valid and enforceable,

7

"[t]he record must show, or there must be an allegation and evidence which shows, that an accused . . . intelligently and understandingly" waived the rights implicated by a guilty plea. Id. at 242, 89 S. Ct. at 1712.

Some of our decisions are also relevant to the issue of whether a waiver has been established in this case. In Pardue v. Burton, 26 F.3d 1093, 1094-95 (11th Cir. 1994), the petitioner sought federal habeas relief from his guilty plea conviction on the ground that he had not been advised of his right to seek more lenient sentencing under the Alabama Youthful Offender Act, a right his plea bargain to a life sentence would forfeit. We explained that:

> A defendant satisfies his threshold burden of showing that a guilty plea was obtained unconstitutionally when he demonstrates that the trial court failed to advise him of his rights under the Youthful Offender Act. After a defendant demonstrates such a failure by the trial court, the burden shifts to the state to show that the defendant nonetheless had knowledge of the Act's protections.

Id. at 1096 (citing Fox v. Kelso, 911 F.2d 563, 570 (11th Cir. 1990) (noting that "[i]n habeas challenges to the validity of a guilty plea, . . . courts uniformly assign to the state . . . the burden of showing that the plea was obtained constitutionally."))

8

Despite differences in the factual circumstances between the foregoing cases and this case, we find the decisions in those cases instructive. Particularly instructive is the Pardue decision, because we cannot justify a less rigorous standard for the waiver of a state statutory right (to consideration for Alabama Youthful Offender Act treatment) than for the waiver of what is at least a federal statutory right (to federal habeas corpus review). The rule we draw from Pardue and the other decisions we have discussed is that in order to be valid, a waiver of the right to seek federal habeas review must be "an intentional relinquishment or abandonment of a known right," the right to federal habeas review. At a minimum, the would-be petitioner must know at the time of the guilty plea that the right to federal habeas review exists, and he must realize he is giving up that right as part of his plea bargain.

With this right, as with others that may be waived in plea bargains, there is no constitutional requirement that it be discussed or acknowledged in the guilty plea colloquy. The source of the defendant's knowledge of the right and of his understanding that he is giving it up is not critical; what is critical is whether that knowledge and understanding exists. See Boykin, at 242, 89 S.Ct. at 1712 ("The record must show, or there must be an allegation and evidence which

9

shows...") (quoting <u>Carnley</u>, at 516, 82 S.Ct. at 890) (emphasis added); <u>Pardue</u>, at 1097 (remanding for a determination of whether the petitioner knew of the right being waived because of his prior experience in the criminal justice system). As for how those matters are to be determined, again we use the related decisions as our guide. If the habeas petitioner establishes that the court which accepted his guilty plea did not inform him of his right to federal habeas review and that he was giving up that right, the burden shifts to the State to show by other evidence the petitioner knew of the right and knew he was waiving it. Whether a guilty plea and an accompanying waiver of rights are knowingly and voluntarily entered is a mixed question of law and fact, which we review <u>de novo.</u> See <u>Marshall v. Lonberger</u>, 459 U.S. 422, 431, 103 S.Ct. 843, 849 (1983).

Because it is undisputed here that the state court which accepted the guilty plea did not inform Allen of his right to seek federal habeas corpus review, the burden shifted to the State to make the requisite showing. The State does not contend Allen's two attorneys told him he had a right to federal habeas review that he was waiving by his guilty plea. Both attorneys unequivocally testified that they told Allen nothing about federal habeas, did not even mention it to him, and the State has no evidence to the contrary.

Instead, the State relies on the language of the plea agreement itself. The plea agreement provided that Allen agreed he would not apply "for parole, commutation of his sentence, reprieve, or any other form of relief from life imprisonment." (emphasis added). The key issue here is whether "any other form of relief from life imprisonment" includes federal habeas corpus relief. We conclude that it does not, for three reasons.

The first reason involves the ambiguous nature of the crucial language of the plea agreement. Under the ejusdem generis canon of construction, "where general words follow a specific enumeration of persons or things, the general words should be limited to persons or things similar to those specifically enumerated." United States v. Turkette, 452 U.S. 576, 581-82, 101 S. Ct. 2524, 2527-28 (1981) (declining to apply the canon where there was no "specific enumeration . . . followed by a general description"); see also City of Delray Beach v. Agricultural Ins. Co., 85 F.3d 1527, 1534 (11th Cir. 1996) (applying the doctrine of ejusdem generis that "when an enumeration of specific things is followed by some more general word or phrase then the general word or phrase will usually be construed to refer to things of the same kind or species as those specifically enumerated.") In Allen's plea agreement, the items of the series that

precede the general catch-all language, including "parole, commutation of his sentence, [and] reprieve," all refer to a reduction of the sentence, not to relief from the underlying conviction itself.

In addition, although the Georgia Supreme Court characterized the plea agreement as one in which "Allen agreed he would serve the remainder of his life in prison. . ," 265 Ga. at 519, 458 S.E.2d at 108, what the agreement actually says is that Allen understood the agreement to mean that "he will be sentenced to serve the remainder of his natural life in the penitentiary." Understanding you will be sentenced to serve your natural life in prison is not the same as agreeing to spend the rest of your life in prison, nor is it the same as agreeing not to attack the validity of the conviction underlying the sentence. Thus, the language of the plea agreement is at least ambiguous about whether it only covered those rights to seek a reduction in sentence, or also covered rights to attack collaterally the conviction and sentence.

We are aware, of course, of the doctrine of <u>contra proferentum</u>, a canon of construction in contract law that counsels in favor of construing ambiguities in contract language against the drafter. Although we have said that the construction of plea agreements "is governed generally by the principles of

contract law, as we have adapted it for purposes of criminal law," see United States v. Pielago, 135 F.3d 703, 709 (11th Cir. 1998), it makes little sense to apply that canon to the defendant's detriment where the issue is whether the defendant knowingly and voluntarily waived a right in a plea agreement, and the defendant has raised ineffective assistance claims against his lawyers (the drafters of the agreement) regarding the plea agreement. None of our cases have applied the contra proferentum doctrine against a defendant in such a situation. Instead, in this circuit we have held repeatedly that ambiguities in plea agreements should be resolved against the government. See, e.g., San Pedro v. United States, 79 F.3d 1065, 1074 (11th Cir. 1996); United States v. Rewis, 969 F.2d 985, 988 (11th Cir. 1992); United States v. Jefferies, 908 F.2d 1520, 1523 (11th Cir. 1990). That well-established rule reinforces the overall burden on the state under Pardue to show evidence of knowing and voluntary waiver.

The second reason we do not interpret the plea agreement's "or any other form of relief from life imprisonment" as extending to federal habeas corpus relief involves the purpose of the agreement as revealed in the background of the negotiations. See, e.g., San Pedro v. United States, 79 F.3d 1065, 1074 (11th Cir. 1996) (a plea agreement "should be read against the background of the

negotiations"); <u>Rewis v. United States</u>, 969 F.2d 985, 988 (11th Cir. 1992) (same). Both of Allen's attorneys testified at the evidentiary hearing that parole was their principal focus in drafting the agreement. The district attorney was concerned about parole or early release because he did not want Allen to get out early from a life sentence, and Georgia had no life without parole sentence at that time. The possibility of early release ~~also~~ became a concern of Allen's attorneys, because they had to allay the district attorney's fears about that possibility in order to get him to give up the death penalty option.

What the district attorney and defense counsel worked out was an agreement that Allen would not attempt to shorten his sentence through "parole, commutation of his sentence, reprieve, or any other form of relief from life imprisonment." We note that all of the specifically identified methods of relief excluded by the chosen language are methods of reducing or cutting short a sentence that would not have been available in the first place if Georgia had a life without parole sentence at the time. The parties sought to supply through their agreement what the Georgia Legislature had not yet provided, a true life without parole sentence, sometimes called a "natural life" sentence.

14

Even if a life without parole sentence had been available under state law, and Allen had pleaded guilty and received it as part of a strategy of avoiding the death penalty, he would still have been free to attack his underlying conviction later. It is not apparent from the plea agreement, the circumstances surrounding it, or anything else in the record that the parties intended to do any more than construct through agreement a life without parole sentence. Or, to put it in terms more relevant to the applicable law of waiver, if the district attorney and defense counsel intended to do more through the agreement than produce a de facto life without parole sentence, they did not tell Allen about it.

Because it is so revealing, we reiterate the very next sentence in the plea agreement following the "or any other form of relief from life imprisonment" language. It says Allen "understands this means he will be sentenced to serve the remainder of his natural life in the penitentiary." It does not say Allen understood it to mean he could not attack his conviction or sentence via a federal habeas proceeding or otherwise, only that his sentence would be the equivalent of a natural life sentence. What better evidence is there of the defendant's understanding of an agreement than what the agreement itself says is his understanding?

15

The third reason we reject the State's argument that the "or any other form of relief from life imprisonment" language waived Allen's right to seek federal habeas review of his conviction is that language of that level of generality is not sufficient to constitute a valid waiver of specific rights. Consider an example. Suppose an agreement states that the defendant knows of and understands that by his guilty plea he is waiving his constitutional right to confront his accusers "and all other rights he would have if he went to trial." No court would hold that language alone sufficient to establish that the defendant knew about and intended to waive such specific trial rights as the right to jury, the right or privilege against self-incrimination, and so forth. Yet, the State asks us to hold language of about the same level of generality to be sufficient to waive the right to seek federal habeas relief.

Except for the plea agreement itself, the State has failed to offer any other evidence from the record to indicate that Allen knew anything about his right to seek federal habeas corpus review or that he voluntarily waived that right. His attorneys did not discuss that right with him or even mention it to him; nor was it mentioned in the guilty plea questionnaire, in the plea agreement itself, or in the guilty plea colloquy. Because we find no indication that Allen even knew he

16

had a right to federal habeas corpus review, much less that he intended to waive it, we hold that Allen's guilty plea did not waive that right.

Our holding today does not require any specific form of waiver, such as an explicit acknowledgment during the guilty plea colloquy that the right to seek federal habeas corpus review is being waived. It is enough to dispose of this case that the State has failed to show any evidence from any source that Allen knew of that right and intended to waive it.

We have taken to heart the points made by our dissenting colleague but are not persuaded by them. He says we have posed the wrong question, that instead of asking whether Thomas knew of and intentionally waived his right to federal habeas review, we should ask whether he agreed to spend the rest of his life in the penitentiary. But our formulation of the question is drawn from an unbroken stream of precedent spanning more than a half-century, from the Supreme Court's decision in Johnson v. Zerbst to our own decision in Pardue v. Barton. Those decisions establish that when it comes to waiver, the question is whether the defendant intentionally relinquished or abandoned a known right. Common sense dictates that there can be no relinquishment or abandonment of a known right unless the one doing the relinquishing knows about that right.

17

The dissent's formulation of the question cannot withstand scrutiny against a simple hypothetical. Suppose a capital defendant, with no understanding whatsoever of the rights he is giving up by forgoing a trial, pleads guilty in order to get a life sentence and does so with the understanding that he will spend the rest of his life in prison. In the dissent's view that defendant's ignorance of the rights being forfeited is immaterial, because the only question is whether he agreed to spend his life in prison. He did agree to do that. Yet, no court would uphold the validity of a guilty plea where the defendant did not know about, and therefore could not validly waive, his right to a jury trial, his right to confront his accusers, his right not to incriminate himself, and so on. See Boykin, 395 U.S. at 242-43, 89 S.Ct. at 1712.

We are aware, as our colleague twice reminds us, that Allen committed horrible crimes. Under our system of justice, however, even those who have committed horrible crimes are entitled to the benefit of the law. The defining characteristic of our rule of law is that it applies to those who are evil as well as those who are saintly, to criminals as well as the law-abiding, to murderers, kidnappers, and robbers, as well as the rest of us. It even applies to Allen.

Because we conclude that Allen has not waived his right to seek habeas corpus review, we have no occasion to address whether such a waiver, if knowingly and voluntarily entered, would contravene constitutional or statutory provisions or public policy. Those issues can be addressed if and when a case arises with evidence establishing that the defendant knowingly and voluntarily attempted to relinquish, as part of a plea bargain, the right to seek federal habeas review.

## III. CONCLUSION

Accordingly, we REVERSE the district court's order and REMAND the case for further consideration in light of this opinion.

FAY, Senior Circuit Judge, dissenting:

Most respectfully, I dissent.

As is often the case, the answer provided by any authority depends upon the question asked. The majority states that "This case presents the question of whether appellant Jody Allen waived his right to seek federal habeas corpus review of his state court conviction when, as part of a plea bargain, he agreed not to seek 'parole, commutation of his sentence, reprieve, or any other form of relief from life imprisonment.'" The majority then concludes that the answer to that question is "no."

In my opinion, by asking the wrong question the majority has arrived at the wrong conclusion. The question this case presents is whether or not the appellant agreed, in exchange for the state dropping or foregoing its effort to obtain a death sentence, to spend the rest of his life in the penitentiary. The clear unambiguous answer to that question is "yes."

Appellant Allen was accused of having committed a series of horrible crimes including murder. The prosecution had made it clear it would seek the death penalty. Allen and his lawyers negotiated a deal. The deal was that Allen would enter guilty pleas and the state

would recommend a sentence of life in prison. That was the contract.[2] The state abandoned its efforts to have Allen executed and Allen agreed to spend the rest of his life in jail.

In an effort to foreclose exactly what the majority does in this case, the parties through their attorneys spelled out that Allen would not seek "parole, commutation of his sentence, reprieve, or any other form of relief from life imprisonment." (emphasis added). To suggest, as the majority does, that such language is ambiguous is simply wrong and contrary to reality. And, although it is always dangerous to inject such into judicial proceedings, this conclusion is totally contrary to common sense.

The law requires that anyone entering into such an agreement do so "knowingly, intelligently, voluntarily, and with the able assistance of counsel." Allen did just that. The majority takes the position that because no one mentioned "federal habeas corpus" Allen did not enter into a legally binding contract (valid waiver). What words could be more inclusive than "any other form of relief from life imprisonment?" Were the lawyers required to specify the federal statutes involved? And, if they had done so would Allen have known any more than he did? Are courts now required to conduct hearings and attempt to educate defendants as to collateral attacks under state law, collateral attacks under federal law, the laws surrounding pardons, parole and commutation of sentences? If so, I suggest there will be few, if any, valid waivers and plea agreements.

---

[2]Plea agreements are controlled by the principles applicable to contracts. As pointed out by the majority opinion, this agreement actually spelled out that it could be enforced by specific performance or injunctive relief.

The majority relies upon the canon of construction known as ejusdem generis in limiting the general terms of the agreement. In discussing this rule, Black's Dictionary cautions that "The rule, however, does not necessarily require that the general provision be limited in its scope to the identical things specifically named. Nor does it apply when the context manifests a contrary intention." Black's Law Dictionary 517 (6th ed. 1990). In my opinion, the intention of the parties to this agreement could not be clearer.

If there were an ambiguity in this contract, and I find none, it seems to me that the canon of construction most appropriate would be the rule of contra proferentum (against the party who proffers or puts forward the thing). If plea bargains are governed by contract principles and any ambiguities are present, they should be resolved against the drafter. United States v. Hawley, 93 F.3d 682, 690 (10th Cir. 1996). In this case the prosecutor was extremely reluctant to enter into any agreement because of the concern about the law of Georgia and whether or not anyone could be sentenced to life in jail with no hope of any reduction under any label. Defense counsel drafted this contract![3] The defendant, through his attorneys,

---

[3]In response to my suggestion that if we are going to rely upon any canon of construction it should be the Rule of Contra Preferentum the majority cites three cases which it says support the proposition that ambiguities in plea agreements are always resolved against the government. See San Pedro v. United States, 79 F.3d 1065, 1074 n.5 (11th Cir. 1996) (Goettel, J. dissenting); Rewis v. United States, 969 F.2d 985, 988 (11th Cir. 1992); United States v. Jeffries, 908 F.2d 1520, 1523 (11th Cir. 1990). I'm perplexed for several reasons. Initially I note that the only indication in any of these opinions as to who the drafter was is in Jeffries at page 1522 where it is pointed out that the Assistant United States Attorney "brought a draft plea agreement to the meeting. . .." Jeffries 908 F.2d at 1522. In my opinion it is safe to assume that unless it is clear to the contrary all plea agreements are drafted by the government. Such being the case these authorities support, rather than refute, the usual approach concerning ambiguities in contracts. Secondly, I fail to see how the mere fact that ineffectiveness of defense counsel has been raised would damage the "law" surrounding the interpretation of contracts.

22

convinced the prosecutor that he would never do exactly what our court allows him to do today. He gains this relief by convincing the majority that the document drafted by his lawyers is ambiguous. Life is stranger than fiction.

There is nothing complicated about this case. Allen committed some horrible crimes. The state of Georgia intended to seek the death penalty. Allen and his lawyers struck a good bargain for Allen. He would not be executed in return for entering pleas of guilty and agreeing to spend the rest of his life in jail. I would hold him to his agreement.

With the greatest respect for my brother and sister, it seems to me that the majority opinion will send a strong signal to all state prosecutors to not enter into plea agreements of this nature. And, in my opinion, that is not good for the judicial system. The agreement struck by the parties was a fair one and I would uphold and enforce it.