304 Ga. 774
FINAL COPY

S18A1334. RAWLES v. HOLT.

BOGGS, Justice.

This Court granted Markell Rawles' application for a certificate of probable cause to appeal the denial of his petition for habeas corpus, posing the question of whether the habeas court erred in finding that Rawles waived his right to file the petition in exchange for a reduced sentence. We conclude that the State has not met its burden of showing Rawles' waiver, and we therefore reverse the trial court's ruling and remand this case with direction.

In March 2010, a jury found Rawles guilty of six counts of armed robbery, 12 counts of aggravated assault, six counts of kidnapping, six counts of false imprisonment, and six counts of possession of a weapon during the commission of a crime. The trial court merged the six counts of aggravated assault into the armed robbery convictions and sentenced him to serve 25 years followed by a term of probation.

Rawles' trial counsel filed a motion for new trial on the general grounds on March 17, 2010. New counsel, Elizabeth Rogan, amended that motion on November 18, 2010, arguing that the evidence was insufficient because it did not support the kidnapping conviction in light of Garza v. State, 284 Ga. 696 (670 SE2d 73) (2008) (superseded by OCGA § 16-5-40 for offenses committed on or after July 1, 2009); the similar transaction evidence was improperly admitted; there were errors in the trial court's instructions to the jury and irregularities in the verdict form; and Rawles' trial counsel was ineffective. In response, the State conceded that three of the issues raised in Rawles' amended motion "have arguable merit." As a result, Rawles and the State discussed Rawles waiving his "right to appeal . . . and be[ing] re-sentenced by th[e] court to a lesser sentence."

On February 4, 2011, the trial court held a hearing on the matter and resentenced Rawles to 15 years to serve followed by a term of probation in accordance with the agreement reached between Rawles and the State. During that hearing, the trial court inquired if Rawles understood that he would "specifically waive [his] right to appeal as a special condition of . . . probation." Rawles asked questions regarding the specific conditions of probation and then

2

responded that he understood and agreed to the waiver. The following colloquy

then took place:

> COURT: As a special condition of your probation, as you have agreed to do to achieve this sentence, you will waive any right to appeal the conviction in this case . . . . If you decide to file a habeas corpus petition it must be filed within 4 years.  Anything further from the State?
> [STATE]: No, Your Honor.
> COURT: Anything further from counsel on his behalf?
> MS. ROGAN: No, Your Honor.
> COURT: And do you understand all of that, Mr. Rawles?
> MR. RAWLES: What was the last little bit you said?
> COURT: About habeas corpus petition that you can file it within 4 years but I believe that would be in violation of your waiver of your right to appeal.
> MR. RAWLES: Yes.
> COURT: So I take that back. I did that automatically.
> MS. ROGAN: Okay.
> COURT: But yes, you're going to waive any right to appeal and you do understand that?
> MR. RAWLES: Yes, ma'am.

About two years later, in November 2013, Rawles filed a pro se petition

for habeas corpus, asserting that his trial counsel was ineffective in failing to

properly investigate and prepare for trial, Rogan was ineffective for coercing

him to waive his right to appeal, and the "judgments and sentences" were

"unconstitutional and unlawful." Rawles filed an amendment to the petition on

March 12, 2014, expanding his ineffective assistance arguments and asserting,

among other things, that he was denied the right to a fair trial because of the inadmissible similar transaction evidence and that the evidence was insufficient to support his kidnapping convictions.[1] Rawles also asserted in his amended petition that he "was coerced into waiving his direct appellate rights."

At the hearing on Rawles' habeas petition, habeas counsel informed the court that, before it could reach the "substantive issues," it had to "decide the waiver issue": whether the "appeal waiver . . . was voluntarily and knowingly entered" and "whether or not it was a waiver as to any, as to a broad waiver as to everything or just a waiver specifically to that appeal issue." Rogan was called to the stand and asked about her discussions with Rawles concerning the agreement reached with the State to seek resentencing. When asked specifically about the appeal waiver, Rogan explained that it was not "done in writing" and that "the Judge, we discussed all this in chambers. The waiver issue was, . . . since we were effectively winning the relief we wanted, the issues that would have been appealed became moot. There was nothing more to appeal." When

---

[1] Thereafter, new counsel filed an entry of appearance on May 13, 2014, and, on August 14, 2014, filed an "Amended Application for Writ of Habeas Corpus," asserting only that Rawles was entitled to an out-of-time appeal because he received ineffective assistance of counsel.

asked, "When you talked about the waiver with Mr. Rawles, the waiver of an appeal, were there any other waivers discussed, any waiving of any other rights," Rogan responded, "I may have mentioned the Habeas Corpus option. I don't recall. None of that . . . was on my mind at the time because there was nothing to appeal. We had won the case. He was getting the relief he sought, which was a lower sentence. So there was nothing to appeal." Rogan explained further that she discussed with Rawles "what is an appeal, what is a Habeas Corpus . . . . There weren't any Constitutional issues that I thought merited continuing on to a Habeas, so that's, you know, I focused on the appeal process."

Rawles, on the other hand, testified that Rogan did not speak to him "about waiving [his] right to appeal in getting [a] lower sentence" and that she never informed him that his "sentence would go from 25 years down to 15." However, Rawles later stated that he did recall Rogan informing him that, if he accepted the lower sentence, he "would no longer have the right to appeal" and that he asked her "what does that mean . . . and she told me everything is all right. I will talk to you when I go back" after the resentencing hearing. Rawles responded in the negative when asked specifically if Rogan talked to him about

5

"waiving [his] right to a Habeas."

Following that hearing, the habeas court denied Rawles' petition, finding that he "voluntarily waived his rights to an appeal, including habeas corpus relief, during the resentencing hearing of his case." The court found that Rawles

> was specifically advised of his habeas rights as a result of the trial court's slip-of-the-tongue [during the resentencing hearing], wherein the trial court reminded Petitioner he had 4 years to file a habeas corpus petition if he chose to do so after advising Petitioner of the special conditions of his probation. However, the trial court realized its mistake in reciting the colloquy and reminded Petitioner he had agreed to waive all of his rights to appeal, including his right to habeas relief. Petitioner and Petitioner's Counsel responded and agreed.

It is from this ruling that Rawles appeals, arguing that he did not waive his right to seek habeas relief and that this case should be remanded for a hearing on the merits of his habeas petition.

"In reviewing the grant or denial of a petition for habeas corpus, this Court accepts the habeas court's factual findings and credibility determinations unless they are clearly erroneous, but we independently apply the law to the facts." (Citation and punctuation omitted.) Jones v. Medlin, 302 Ga. 555, 557 (807 SE2d 849) (2017). It appears that the habeas court relied only on the colloquy between Rawles and the trial court in concluding that Rawles waived his right

6

to seek habeas relief.

This Court has held that a waiver of the right to appeal in a non-death penalty case does not violate public policy and is constitutional and enforceable. Thomas v. State, 260 Ga. 262, 264 (392 SE2d 520) (1990). And in Allen v. Thomas, 265 Ga. 518 (458 SE2d 107) (1995), we held that waivers of the right to seek habeas corpus relief are also constitutional and enforceable. Id. at 520 (2) ("We can see no reason to distinguish between waivers of the right to appeal and waivers of the right to seek post-conviction relief from life imprisonment. In each instance, the waivers foster the interests of the state and the defendant in finality.").

As explained in Rush v. State, 276 Ga. 541 (579 SE2d 726) (2003) with regard to the waiver of the right to appeal:

> The fact that a waiver of the right to appeal is voluntary, knowing, and intelligent may be shown in two ways. First, a signed waiver may indicate that the defendant understands the right he is waiving. Second, and more important, detailed questioning of the defendant by the trial court that reveals that he was informed of his right to appeal and that he voluntarily waived that right is sufficient to show the existence of a valid, enforceable waiver.

Id. at 542, citing Thomas, supra, 260 Ga. at 262. We apply the same test here. Thus, the State must show by one or both of these means that Rawles

specifically waived his right to file a habeas corpus petition. See Allen v. Thomas, 161 F3d 667, 670 (II) (11th Cir. 1998) (employing a somewhat different test for analyzing federal habeas review waiver but concluding that the burden is ultimately on the State to show such waiver).

In this case, there was no written waiver, and the colloquy between the trial court and Rawles shows that Rawles understood that he was specifically waiving his right to *appeal* and that Rawles affirmed that he made the decision to waive that right freely and voluntarily. The record does not show, however, that he knowingly waived the right to petition for a writ of *habeas corpus*.

The court informed Rawles that he could file a habeas corpus petition within four years and then, upon inquiry by Rawles, informed him that it *believed* the filing of a habeas corpus petition would be in violation of the waiver of his right to appeal. These two statements are the only mention of habeas corpus during the hearing. The court then informed Rawles, "But yes, you're going to waive *any right to appeal* and you do understand that?" (Emphasis supplied.) It appears from this colloquy that the court believed "any right to appeal" inherently included the right to petition for a writ of habeas corpus. But these rights are separate and distinct.

The right to appeal in a criminal case is not constitutional, but instead is "purely a creature of statute," (citations and punctuation omitted.) State v. Cash, 298 Ga. 90, 92 (1) (b) (779 SE2d 603) (2015), while the writ of habeas corpus is an ancient common law right preserved in the federal and state Constitutions. See U. S. Const. Art. 1, Sec. 9, Cl. 2;[2] Ga. Const. Art. I, Sec. I, Par. XV.[3] As this Court explained in Gibson v. Turpin, 270 Ga. 855 (513 SE2d 186) (1999), generally, after direct appeals have ended, "a prisoner may seek a writ of habeas corpus alleging that his trial and direct appeals included substantial error under the federal or state constitutions." Id. at 857 (1). "[H]abeas corpus is not a criminal proceeding, but is considered to be civil in nature. It is a collateral attack[4] that is separate and distinct from direct review, and occurs only after

---

[2] See Felker v. Turpin, 518 U. S. 651, 663-664 (III) (116 SCt 2333, 135 LE2d 827) (1996) (discussing history of writ of habeas corpus under the Suspension Clause of United States Constitution, which provides that the writ shall not be suspended except in cases of rebellion or invasion).

[3] See also OCGA § 9-14-42 (governing state habeas corpus procedure).

[4] The term "collateral attack" has been defined as "[a]n attack on a judgment in a proceeding other than a direct appeal . . . . A petition for a writ of habeas corpus is one type of collateral attack." Black's Law Dictionary (10th ed. 2014). See Wall v. Kholi, 562 U. S. 545, 552 (II) (C) (131 SCt 1278, 179 LE2d 252) (2011) ("We have previously described a variety of proceedings as 'collateral,' and all of these proceedings share the characteristic that we have

a prisoner has failed to obtain relief by direct appeal. It is not an extension of direct appeal." (Citations omitted.) Id.

Here, the record shows that the trial court conflated the right to appeal with the right to petition for a writ of habeas corpus. And, as a result, it did not engage in the "detailed questioning" regarding waiver of the right as prescribed by Rush, supra, 276 Ga. at 542. At best, the court informed Rawles of his right to file a petition for a writ of habeas corpus but then withdrew its advisement that he could file a petition within four years because it believed that Rawles waived the right to so do by waiving his right to appeal.[5] It, therefore, inadequately informed Rawles of his right to petition for a writ of habeas corpus and did not inquire of him whether he understood that he was waiving that specific right so that he could acknowledge such a waiver. In contrast, the applicable federal rule requires that the court address the defendant in open

identified, i.e., they stand apart from the process of direct review. For example, our cases make it clear that habeas corpus is a form of collateral review." (Punctuation omitted.))

[5] It is not clear from the colloquy, where the trial court stated, "So I take that back. I did that automatically," whether the court was taking back its statement that a habeas petition would be in violation of the waiver of Rawles' right to appeal, or whether it was taking back its statement that Rawles could file a habeas petition within four years.

court to ensure that he understands the terms of any agreement waiving the right to collaterally attack the sentence.[6] Although cases decided under the federal rule are not controlling, they illustrate the important distinction between a waiver of appeal and a waiver of the right to file a habeas petition. See, e.g., Lemke v. Ryan, 719 F3d 1093, 1096-1097 (A) (9th Cir. 2013) ("a waiver of collateral attack must be express, and . . . a plain waiver of appeal does not suffice"; no waiver of collateral attack when written waiver provided only that defendant "gives up the right to appeal," and colloquy with court mentioned only waiver of right to appeal and that defendant could file petition for post-conviction relief (punctuation omitted)); compare Griffis v. United States, No. 17-12944, 2018 U. S. App. LEXIS 23144, *3-4 (11th Cir., August 20, 2018)

---

[6] Although this case involves waiver as part of an agreement to resentence, appeal and habeas corpus waivers generally arise in the context of a plea agreement. Under the Federal Rules of Criminal Procedure, the trial court *must*, before accepting a plea of guilty, "address the defendant personally in open court. During this address, the court must inform the defendant of, and determine that the defendant understands, . . . the terms of any plea-agreement provision waiving the right to appeal *or* to collaterally attack the sentence." (Emphasis supplied.) Fed. R. Crim. P. 11 (b) (1) (N). Our Uniform Superior Court Rule speaks in more general terms, providing that the trial court is required to inform the defendant on the record of "the terms of any negotiated plea." USCR 33.8 (D) (1).

(written waiver provided that defendant waived his right to appeal and his right to collaterally attack conviction and sentence on any ground; trial court inquired if defendant understood, and defendant affirmed, that he was "giving up [his] right to directly or in a post-conviction proceeding indirectly attack your sentence" (punctuation and emphasis omitted)); Demello v. United States, 623 Fed. Appx. 969, 972-973 (11th Cir. 2015) (same). Because the State has failed to meet its burden of showing a knowing waiver of Rawles' right to file a petition for habeas corpus, we reverse the judgment of the habeas court and remand this case for the court to address the merits of Rawles' petition, on which we express no opinion.[7]

Judgment reversed and case remanded with direction. All the Justices concur, except Peterson and Bethel, JJ., who dissent.

---

[7] We disagree with the dissent that a remand for the habeas court to apply the right legal standard is necessary. As mentioned on page 777, supra, the habeas court relied solely on the trial court colloquy to find that Rawles waived his right to seek *habeas* relief. As such, a remand for the habeas court to apply the proper standard would be futile as the court would have nothing to review other than what we can review just as well.

12

PETERSON, Justice, dissenting.

I concur wholeheartedly with the majority that the superior court erred when it concluded that a valid appeal waiver necessarily meant that the right to petition for a writ of habeas corpus was also waived. But, unlike the majority, I would stop there. The superior court applied the wrong legal standard by conflating an appeal waiver with a habeas waiver; whether there was a valid appeal waiver does not answer the separate question of whether there was a valid habeas waiver. But the superior court has not yet applied the proper legal standard to the question of whether there is an appeal waiver. Instead of applying the right standard ourselves for the first time on appeal and reversing the superior court outright, we should vacate and remand so the superior court has the first opportunity to apply the right standard. And the ultimate result when the right standard is applied is not as obvious to me as it appears to be to

the majority. Accordingly, I respectfully dissent from the majority's judgment of reversal.

I am authorized to state that Justice Bethel joins in this dissent.

Decided December 10, 2018.

Habeas corpus. Bibb Superior Court. Before Judge Colvin.

Zell & Zell, Rodney S. Zell, for appellant.

Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew M. Youn, Assistant Attorney General, for appellee.