ERVIN, Chief Judge.
M.C.J., a child, appeals an adjudication of delinquency for vehicular homicide,[1] and although we affirm as to all four points raised, we find that two of the issues merit discussion.
On the afternoon of March 20, 1982, M.C.J. was driving a 1973 Plymouth automobile westbound on Beaver Street in Jacksonville when a Fiat attempted to make a left turn from Devoe Street onto Beaver ahead of her and in the process pulled in front of her oncoming vehicle. To avoid hitting the Fiat, M.C.J. swerved to the left and collided head-on with a jeep convertible in the eastbound lane of Beaver Street, causing the deaths of its driver and his infant son. The Fiat was not involved in the collision.
Three witnesses testified at the delinquency hearing that just before the accident, they observed the moving Plymouth and opined that M.C.J. was exceeding Beaver Street’s 55-mile-per-hour speed limit. At the scene, Officer Wright, a homicide investigator with the highway patrol, observed that the Plymouth left 32-foot scrub marks, not skid marks, which indicated to him that the vehicle’s tires had slid, because they were turned to the left. In his opinion, the marks would indicate some braking action, but not enough to cause the wheels to lock. Moreover, the marks might be the result of a defective braking condition, such as worn pads. That M.C.J. was aware her automobile’s brakes were defective was evinced by her telephone conversation with her husband, just following the accident, in the nearby home of witness Barbara Herrington, who testified that M.C.J. had asked her husband, accusingly, why he had not yet repaired the brakes. Indeed, M.C.J. herself confirmed her realization of the brakes’ condition through her inculpatory statement to Officer Wright, several days following the accident.
A visual inspection of the interior of the vehicle by Officer Wright at the scene also revealed several cans of beer on the right front floorboard, some unopened and still cool, and others empty. Three hours following the accident, Officer Wright» while talking to M.C.J. at the hospital, smelled alcohol on her breath, although he said she did not then appear to be intoxicated. Further evidence relevant to the issue of M.C. J.’s reckless behavior disclosed that M.C.J. did not at any time, including that of the accident, possess a Florida driver’s license.
The Plymouth sustained heavy damage to the left front and bumper, and, pursuant to routine procedure, Officer Wright had the car towed and locked up for a mechanical inspection and inventory, which occurred approximately five hours after the accident. The front wheels were removed at that time and the brakeliners and shoes obtained for inspection, although the rear brakeliners and shoes were not removed until two days later. A physical damage appraiser and mechanic testified that the front shoes were completely worn through, leaving metal on metal, and the rear shoes were extremely thin. The defense unsuccessfully moved to suppress the brakelin-ers and any results from tests performed on them on the grounds that such evidence was obtained without a warrant and was the product of an unreasonable search and seizure. The trial court denied the motion, finding that at the time the car was impounded, Officer Wright had probable cause to believe M.C.J. had committed ve *1004 hicular homicide pursuant to section 782.-071, Florida Statutes, and that the search and seizure without a warrant were reasonable. We agree.
M.C.J. first contends that the trial court erred in denying the motion to suppress evidence relating to the brakeliners in that the state failed to establish that the warrantless search and seizure of the brak-eliners were justified under any of the exceptions to the search warrant requirement. It is not disputed that the car was legally impounded.[2] The validity of war-rantless inventory searches of impounded motor vehicles has been upheld. South Dakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). The determinative issue concerns the scope of the search and seizure, and whether the warrantless search could reasonably extend to the brakeliners.[3] We find that the liberal approach taken by the United States Supreme Court in two recent cases, United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982) and Michigan v. Thomas, 458 U.S. 259, 102 S.Ct. 3079, 73 L.Ed.2d 750 (1982), dealing with warrant-less searches and seizures of automobiles, supports our decision to affirm the trial court’s denial of the motion to suppress. These cases reaffirm the principle, first recognized in Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), that a warrantless search of a vehicle, stopped on probable cause to believe it contained incriminating evidence, does not offend the unreasonable search and seizure clause of the Fourth Amendment. Officer Wright clearly had probable cause to believe M.CJ.’s automobile contained incriminating evidence. His belief was based not only upon his observations of both the scrub marks and the vehicle at the scene but also the statements of M.C.J. and the witnesses to the accident. The fact that the searching officer conducted a search of the impounded vehicle without a warrant is without consequence, as long as the evidence supports the determination that the officer was armed with probable cause. The exception to the warrant requirement is no broader or narrower than the scope of a search which a magistrate can direct by warrant issued upon probable cause. United States v. Ross, 456 U.S. 823-24, 102 S.Ct. 2171-2172, 72 L.Ed.2d 592-93. As a result, if probable cause exists to search a stopped vehicle, the warrantless search may be extended to every part of the vehicle and its contents that may conceal the objects of the search. Id. 456 U.S. at 820-21, 102 S.Ct. at 2170-2171, 72 L.Ed.2d at 591. Moreover, it is now well recognized that the absence of exigent circumstances does not per se preclude an inventory search of a stopped vehicle when conducted after the officers possess probable cause to arrest its driver for a violation of the law. Michigan v. Thomas.
We therefore agree that the seizure of the objects of the search — the defective brakeliners — was neither unreasonable nor unjustified.
Point IV urges that the state failed to present sufficient evidence to establish M.CJ.’s guilt of vehicular homicide. More specifically, appellant argues that the state failed to establish that her acts, even if negligent, were the proximate cause of *1005 the accident, since the action of the Fiat pulling in front of her was, in her view, an independent, intervening cause. Proximate causation is of course an essential requirement for conviction of vehicular homicide, see J.A.C. v. State, 374 So.2d 606 (Fla. 3d DCA 1979). The rule is well established in the area of civil tort litigation that a negligent person is not liable for damages suffered by another when some separate action is the active and efficient intervening cause of the accident. National Airlines, Inc. v. Edwards, 336 So.2d 545, 547 (Fla.1976); Kwoka v. Campbell, 296 So.2d 629 (Fla. 3d DCA 1974), cert. denied, 304 So.2d 450 (Fla.1974); Atlantic Coast Line Railroad Co. v. Ponds, 156 So.2d 781, 784 (Fla. 2d DCA 1963); accord, Helman v. Seaboard Coast Line Railroad Co., 349 So.2d 1187 (Fla.1977). Nicholas v. Miami Burglar Alarm Co. Inc., 339 So.2d 175, 177 (Fla.1976); Tuz v. Burmeister, 254 So.2d 569 (Fla. 1st DCA 1971), cert. denied, 260 So.2d 514 (Fla.1972). On the other hand, if the intervening cause is foreseeable, the original negligent actor may yet be held liable. Gibson v. Avis Rent-A-Car System, Inc., 386 So.2d 520, 522 (Fla.1980). As Gibson demonstrates, it is necessary to determine whether the harm that occurred was within the scope of the danger created by the defendant’s negligent conduct. Id. This may be answered in a number of ways, one being that the type of harm has so frequently resulted from the same type of negligence that “ ‘in the field of human experience’ the same type of result may be expected again.” Pinkerton-Hays Lumber Co. v. Pope, 127 So.2d 441, 443 (Fla. 1961) (emphasis in original).
Applying the above test to the facts before 'us, we see that although M.C.J. could not reasonably have foreseen the specific circumstance causing her to swerve her automobile, i.e., the Fiat’s sudden turn into her lane of traffic, she should have reasonably foreseen that the same general type of harm might occur if she knowingly drove her vehicle with defective brakes at excessive speeds. Given the evidence before us, it is impossible to say, as was done in Nunziato v. P & L Auto Parts, Inc., 403 So.2d 1031 (Fla. 3d DCA 1981), that there is no evidence that the original tortfeasor set in motion a chain of events resulting in the deaths of the occupants of the other vehicle. The circumstances in Gibson are more in accord with those in the case at bar. The original negligent actor there, an intoxicated motorist, should have reasonably foreseen that the stopping of his automobile in the middle of an interstate highway might cause the type of harm that actually occurred: a collision to the rear of a following vehicle that was required to stop due to the inebriate’s negligent act.
Accordingly, we hold that the state presented sufficient evidence to show that appellant killed other human beings by the operation of a motor vehicle in “a reckless manner likely to cause the death of, or great bodily harm to, another,” and that appellant’s actions were also a proximate cause of the deaths.
AFFIRMED.
JOANOS, J., and PEARSON, TILLMAN, Associate Judge (Retired), concur.

. Vehicular homicide is defined by Section 782.-071, Florida Statutes (1981), as
the killing of a human being by the operation of a motor vehicle by another in a reckless manner likely to cause the death of, or great bodily harm to, another.

. Cf. Miller v. State, 403 So.2d 1307, 1313 (Fla.1981).

. Compare Robbins v. California, 453 U.S. 420, 101 S.Ct. 2841, 69 L.Ed.2d 744 (1981). In Robbins, the Court considered for the first time whether police officers, entitled to conduct a warrantless search of an automobile, may open a container found within the vehicle, and concluded that the warrantless search was impermissible, based on its earlier holdings that a closed piece of luggage found in a lawfully searched car is constitutionally protected to the same extent as closed pieces of luggage found anywhere else. In his concurring opinion, Justice Powell stated that possibly “the controlling question should be the scope of the automobile exception to the warrant requirement." Id. at 435, 101 S.Ct. 2841, 69 L.Ed.2d 744. The Court, in United States v. Ross, rejected the precise holding in Robbins, noting that there, unlike Robbins, "the parties have squarely addressed the question whether, in the course of a legitimate warrantless search of an automobile, police are entitled to open containers found within the vehicle." 456 U.S. at 817, 102 S.Ct. 2157, 72 L.Ed.2d 572.