752 So.2d 6 (2000)
Edner MICHEL and Fritz Joseph, Appellants,
v.
STATE of Florida, Appellee.
Nos. 5D99-564, 5D99-565.
District Court of Appeal of Florida, Fifth District.
January 7, 2000.
*7 Larry Mark Polsky, Daytona Beach, for Appellants.
Robert A. Butterworth, Attorney General, Tallahassee, and Belle B. Schumann, Assistant Attorney General, Daytona Beach, for Appellee.
GRIFFIN, J.
Edner Michel ["Michel"] and Fritz Joseph ["Joseph"] appeal their convictions for vehicular homicide.
*8 On the night of May 13, 1996, Joseph was driving Michel's 1987 International truck down I-95 at approximately 22 to 24 miles per hour. The truck lacked rear tail lights, reflective devices, and a rear bumper. It also had exposed frame rails, which hung over the back of the truck. At approximately 5:20 a.m., the defendants' truck was struck from behind by the victim, Michel T. Power, on a dark stretch of highway. The victim, who was also southbound on I-95 at a speed of between 65 and 70 m.p.h., drove his vehicle up and under Michel's truck, the truck's steel frame rails protruded into the victim's car and the victim was instantly killed. There was evidence that the car was dragged some distance down the highway before the truck was brought to a halt on the shoulder.
Michel and Joseph had begun their trip in Louisiana and had driven through Jacksonville on their way to Miami. Joseph was driving the truck because Michel, who owned the vehicle, did not know how to drive a stick shift. They had been stopped by a highway patrolman on I-95 at approximately 6 p.m. on Sunday, May 12, 1996, approximately eleven hours before the accident, for driving too slow. The driver was given a ticket for impeding the flow of traffic, and the owner was given a ticket for having no valid tag and no insurance. The officer was going to write additional citations, including a citation for the lack of rear lights, but was called to an accident with injuries involving another officer. The officer told Michel and Joseph to take the next exit, where they could get the truck properly equipped, and told them not to reenter the highway until the problems were fixed.
The defendants did not testify at trial, but their statements were presented to the jury. Michel, the owner/passenger of the truck, said they were stopped in the emergency lane when the car hit them. He acknowledged receiving the citations in Jacksonville, but did not have the car repaired. He claimed that the driver, Joseph, was bothered that the truck had no rear lights, so they pulled over and waited for daylight. Despite being informed that the physical evidence did not support his story, he maintained that they were stopped on the side of the road, asleep, when they were hit from behind. Michel admitted that the trooper who stopped them in Jacksonville told them not to drive at night and not to drive on the interstate. He did not stop because "I take the chance."
Joseph also admitted that the Jacksonville police officer told him not to drive the vehicle at night. He also claimed that they were stopped, asleep on the side of the road, prior to the collision.
Michel was convicted of principal to vehicular homicide and Joseph was convicted of vehicular homicide. Despite the absence of any prior criminal record, the defendants' sentencing scoresheets totaled 176 points: 56 points for vehicular homicide and 120 points for victim injury (death). Accordingly, even though vehicular homicide is a third-degree felony with a statutory maximum penalty of five years, each was sentenced under the guidelines to fifteen years and five months in the Department of Corrections.[1]
Michel complains that the trial court erred by the denial of his motion for judgment of acquittal of the charge of principal in the first degree to vehicular homicide. Vehicular homicide is defined by the Florida Statutes as:
the killing of a human being, or the killing of a viable fetus by any injury to the mother caused by the operation of a motor vehicle by another in a reckless manner likely to cause the death of, or great bodily harm to, another..... *9 s. 782.071(1), Fla. Stat. (1995) (emphasis added). Michel contends that he cannot be convicted of principal to vehicular homicide because he was not driving the truck when the accident occurred. He asserts that sitting in the passenger seat of a truck which he owned cannot be used as the basis of a prosecution for this offense, and that it would be unfair to hold him criminally responsible for the victim's death, when the victim "in effect, killed himself by running into the rear of Appellant's motor vehicle which was traveling [sic] at 20 m.p.h. with the decedent being in a motor vehicle whose air bag did not deploy according to the testimony at trial."
Michel relies largely on Velazquez v. State, 561 So.2d 347 (Fla.3d DCA), cause dismissed, 569 So.2d 1280 (Fla.), and review denied, 570 So.2d 1306 (Fla.1990)[2], which was a prosecution for vehicular homicide based on the defendant's participation in an illegal drag race, in which the co-participant was killed in a single car accident. The trial court denied a motion to dismiss, finding that it was a question of fact for the jury as to whether the defendant's participation in the "drag race" was a sufficient legal cause of the co-participant's death so as to support a conviction for vehicular homicide. On appeal, the Third District agreed that the defendant could not be found guilty of vehicular homicide, relying on principles of proximate causation. The court accepted the concept that the defendant's conduct was a "cause in fact" of his co-participant's death, noting that causation embraces both the situation where the death would not have occurred "but for" the defendant's conduct and where the defendant's conduct was a "substantial factor" in the result. However, the court still declined to allow the prosecution, noting that in some situations public policy and fairness considerations preclude the imposition of criminal liability even if the defendant's conduct is deemed to be a "cause in fact" of the prohibited result. Id. at 351. The court held that the case before it was one of those cases in which policy considerations precluded the defendant from being found to be a "legal cause" of his co-participant's death. The court concluded:
In our judgment, it is simply unfair, unjust, and just plain wrong to say that the defendant in the instant case is criminally responsible for the death of the deceased when it is undisputed that the deceased, in effect, killed himself. No one forced this young man to participate in the subject "drag race"; no one forced him to whirl around and proceed back toward the canal after the race was apparently over; no one forced him to travel 123 m.p.h., vault a canal, and kill himself upon impact. He did all these things himself, and was, accordingly, the major cause of his own death. We are constrained by law to construe criminal statutes strictly in favor of the accused, § 775.021(1), Fla.Stat. (1989), and, given this salutary principle of statutory construction, we are unwilling to construe our vehicular homicide statute to impose criminal liability on the defendant under the circumstances of this case.
Id. at 353-354.
Cases like Velazquez are plainly distinguishable from the facts of the case. Such cases involve the death of a participant in an illegal event, who contributed to his or own death. In these types of cases, there is a marked reluctance to hold one participant guilty for the death of another participant. See Wayne LaFave and Austin Scott, Criminal Law s. 78, at 592 (1972) ("[O]ne whose criminally negligent conduct kills another, justly should not be liable for the unintended death (even though it be a foreseeable death) of a willing participant in the same criminally negligent conduct.").
By contrast, this case involved the death of an innocent third party, which makes the policy considerations expressed in Velazquez *10 inapplicable, and opens the defendant to prosecution as an aider and abetter. The Velazquez court itself noted this distinction, stating:
We agree that if the deceased had collided with an oncoming motorist who happened to be in the vicinity lawfully using the subject road resulting in the said motorist's death, the defendant would be criminally liable for this death on an aiding-and-abetting theory; clearly, the deceased would be guilty of vehicular homicide in killing the oncoming motorist, and the defendant, in participating in the illegal "drag race," would be aiding and abetting the deceased in the latter's reckless driving and ultimate negligent homicide. Jacobs v. State, 184 So.2d 711 (Fla. 1st DCA 1966). In such a case, however, the oncoming motorist could in no way be said to be responsible for his own death and, consequently, no policy or fairness reason would exist for finding no proximate cause. Clearly, this cannot be said in the instant case.
561 So.2d at 353.
Furthermore, the fact that defendant was not driving the vehicle at the time of the accident does not preclude his prosecution for principal to vehicular homicide. A similar contention was recently addressed and rejected in State v. Morris, 740 So.2d 554 (Fla. 1st DCA 1998). In Morris, the defendant was driving a third party's vehicle, but made his fifteen-year-old passenger drive the vehicle after he became too drunk to drive. The fifteen year-old-passenger fell asleep at the wheel, crossed the center lane, and struck and killed an innocent third party. The defendant passenger was prosecuted for manslaughter by culpable negligence. The trial court dismissed the information on the basis that the facts failed to establish a prima facie case. However, the appellate court reversed, noting:
The trial court concluded that the cause of the instant fatality was "that the driver of the car fell asleep," "not so much that the [unlicensed] person was driving, but that he fell asleep." Morris however, like M.C.J., although he could not have foreseen the specific circumstance causing deaththat C.S. would fall asleep at the wheelnevertheless reasonably should have foreseen that the same general type of harma deadly auto accidentmight unfold from ordering a reluctant, unlicensed juvenile behind the wheel of a car, in the wee hours of the morning, on a dark, two-lane highway, with a drunk passenger unable to supervise in any way. The harm that occurreda deadly auto accident "was foreseeable and within the scope of the danger created by [Morris's] negligent conduct." [M.C.J. v. State, 444 So.2d 1001,] Id. at 1005 [(Fla. 1st DCA 1984)]. The trial court thus erred as a matter of law in concluding that there is no evidence that Morris set in motion a chain of events resulting in the death of James Acree. M.C.J.

Id.
Other courts have likewise held that the owner of a motor vehicle can be found criminally liable either as a perpetrator or as a principal in the first degree[3] for procuring or permitting the vehicle to be driven in a criminally negligent or reckless manner by a third party. As was explained in State v. Travis, 497 N.W.2d 905 (Iowa App.1993):
Numerous courts have held the owner or person in control of a motor vehicle criminally liable for a homicide committed in operating a vehicle, not only when driving it personally, but also when procuring or permitting the vehicle to be driven by another person who is [o]n the vehicle with him or her. Story v. United States, 16 F.2d 342, 344 (D.C.Cir.), *11 cert. denied, 274 U.S. 739, 47 S.Ct. 576, 71 L.Ed. 1318 (1927). See also 7A Am. Jur.2d Automobiles and Highway Traffic § 326 (1980). Generally, such liability arises when the owner or person in control of a motor vehicle puts it in the immediate control of a careless and reckless driver, remains in [or on] the vehicle and permits the driver, without protest, to so recklessly operate the vehicle as to cause the death of another. Story, 16 F.2d at 344. See e.g., Brown v. State, 129 Ga.App. 743, 201 S.E.2d 14, 15 (1973) (upholding conviction for involuntary manslaughter even though evidence could establish defendant who owned vehicle was not driving at time of collision but had earlier been driving and had not protested reckless manner in which driver was proceeding); State v. Hopkins, 147 Wash. 198, 265 P. 481 (1928) (affirming conviction for involuntary manslaughter when reasonable jury could conclude owner-defendant entrusted her vehicle to likely intoxicated driver while she rode as passenger).
Id. at 907. See also State v. Satern, 516 N.W.2d 839 (Iowa 1994) (proof that defendant aided and abetted an intoxicated driver in the operation of the defendant's automobile would make him liable for the foreseeable consequences of his act on a theory of joint criminal conduct); State v. Morris, 456 S.W.2d 840 (Tenn.1970) (owner of automobile who asked intoxicated person to drive could be convicted of involuntary manslaughter).
Evidence that Michel had procured Joseph's aid in driving his truck to Miami, while he was sitting in the passenger seat, appears sufficient to sustain his conviction for principal in the first degree to vehicular homicide, under section 777.011, Florida Statutes (1995):
777.011. Principal in first degree
Whoever commits any criminal offense against the state, whether felony or misdemeanor, or aids, abets, counsels, hires, or otherwise procures such offense to be committed, and such offense is committed or is attempted to be committed, is a principal in the first degree and may be charged, convicted, and punished as such, whether he or she is or is not actually or constructively present at the commission of such offense.
Thus, the trial court properly denied Michel's motion for a judgment of acquittal to the extent it was based on the contention that a passenger in a vehicle cannot be convicted as principal to vehicular homicide.
Michel and Joseph both also argue that the evidence fails to sustain a finding that they were operating the truck in a "reckless" manner within the meaning of the vehicular homicide statute and that no analogous case has been found. Defendants urge that driving a vehicle too slowly at night, without tail lights or brake lights, cannot support a finding that the vehicle was being operated in a "reckless" manner likely to cause death. They note that there was no evidence that excessive speed, alcohol or drugs was involved in the accident, that no other motorist had any problem seeing the truck during the three hour period it was on the road from Jacksonville to Port Orange and the victim's airbag failed to deploy. Defendants concede that they were in violation of the civil traffic laws, and most specifically the statutes requiring taillamps, stop lamps, and prohibiting the obstruction of the highway, ss. 316.221, 316.222 and 316.2045, Fla. Stat. (1993), but defendants contend that such civil traffic infractions cannot support a finding a recklessness.
We cannot agree. The court explained what type of act will constitute "reckless driving" in Lewek v. State, 702 So.2d 527 (Fla. 4th DCA 1997):
In determining whether the trial court erred in denying the Defendant's motion for judgment of acquittal, we must first explore what actions will constitute reckless driving. Driving recklessly means driving with a willful or wanton disregard for safety. See State v. May, 670 *12 So.2d 1002 (Fla. 2d DCA 1996). "Willful" means "intentional, knowing, and purposeful," and "wanton" means with a "conscious and intentional indifference to consequences and with knowledge that damage is likely to be done to persons or property." W.E.B. v. State, 553 So.2d 323, 326 (Fla. 1st DCA 1989)(quoting Fla. Std. Jury. Instr. (Misd.) (reckless driving)). In other words, the degree of culpability required to prove reckless driving is less than culpable negligence, which is the standard for manslaughter, but more than a mere failure to use ordinary care. See McCreary v. State, 371 So.2d 1024 (Fla. 1979); State v. Esposito, 642 So.2d 25 (Fla. 4th DCA 1994). Although the Defendant need not have foreseen the specific circumstances causing the death of the victims, it is sufficient that the Defendant should have reasonably foreseen that the same general type of harm might occur if he knowingly drove his vehicle under circumstances that would likely cause death or great bodily harm to another. See W.E.B., 553 So.2d at 323. Therefore, to determine whether the Defendant was driving recklessly, the question is whether the Defendant could reasonably foresee that if he knowingly drove his vehicle in such a manner and under such conditions as he did, he was likely to cause death or great bodily harm; the victim's conduct is irrelevant unless it was the sole proximate cause of the homicide or unless there is some reason why it would be unjust or unfair to impose criminal liability. See Union v. State, 642 So.2d 91, 92 (Fla. 1st DCA 1994). Thus, the focus is on the defendant's actions, i.e., what are the circumstances under which he knowingly drove, and was it reasonably foreseeable that death or great bodily harm could result.
Id. at 530-531.
In this case, the evidence established that defendants had been ordered off the Interstate for failing to have the proper equipment on their truck. Despite this warning, they drove the truck on a dark stretch of highway at night, without any rear warning lights, at a speed of between 22 and 24 m.p.h. and with metals rails hanging out of the back of the truck, which had no bumper. The accident occurred when the victim, driving at normal highway speeds, failed to see the vehicle in time to avoid the fatal collision. This evidence will support a finding by the jury that defendants knowingly drove the vehicle under circumstances that would likely cause the death of another.
AFFIRMED.
W. SHARP, and PETERSON, JJ., concur.
NOTES
[1] Because death of the victim is an element of the crime of vehicular homicide, under the current statutory scheme, anyone committing the crime will necessarily score a minimum of almost double the statutory maximum.
[2] The defendants also rely on W.E.B. v. State, 553 So.2d 323 (Fla. 1st DCA 1989). We accept the analysis of W.E.B. but find the underlying facts to be materially distinguishable.
[3] Florida's aider-abettor statute has eliminated all distinctions between aider or abettors, principals of the first or second degree, and accessories before the fact, making all equally responsible for entire transaction as principals in the first degree. Potts v. State, 430 So.2d 900 (Fla.1982).