904 So.2d 558 (2005)
D.E., A Child, Appellant,
v.
STATE of Florida, Appellee.
No. 5D04-3356.
District Court of Appeal of Florida, Fifth District.
June 3, 2005.
*560 James S. Purdy, Public Defender, and Leonard R. Ross, Assistant Public Defender, Daytona Beach, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Bonnie Jean Parrish, Assistant Attorney General, Daytona Beach, for Appellee.
MONACO, J.
D.E. appeals the trial court's order of commitment that adjudicated him guilty of vehicular homicide and placed him in a level six moderate risk residential program. He asserts on appeal that the trial court erred in denying his motion for judgment of dismissal on the theory that the State failed to prove that he was driving in a reckless manner. Because the evidence presented was sufficient to prove vehicular homicide, we conclude that the trial court properly denied the motion for judgment of dismissal, and affirm.
In a petition for delinquency filed by the State, D.E. was charged with vehicular homicide. After an adjudicatory hearing, the trial court found Appellant guilty as charged, and placed him on restrictiveness level 6, not to exceed his nineteenth birthday. The evidence presented at the disposition hearing reflected that about 16 minutes prior to sunrise on December 17, 2002, D.E. and his seventeen-year-old brother were on their way to Lake Brantley High School. D.E. had obtained his Honda Prelude about one week prior to the accident. At the time, D.E. was sixteen years old and had only a learner's permit. No one besides his brother was in the Honda with him.
At the adjudicatory hearing the State called a number of witnesses, including an expert in accident reconstruction and speed calculations. He stated that D.E. was traveling north on a five-lane road (including a center turn lane) in a residential area near his school, and was straddling the two north bound lanes. He estimated that immediately prior to losing control of his vehicle, D.E. drove his vehicle around a sharp curve in the road traveling at about 100 mph. He opined that D.E. jerked the vehicle to the left causing it to slide and cross over into the lanes of oncoming traffic, where it collided with the victim's vehicle. At the time D.E. lost control of his automobile he was going at least 89 miles per hour in a 45 mile per hour speed zone. The vehicles collided with such force that both D.E. and his brother were ejected from the car. The parties stipulated at the hearing that the victim's death was a result of the injuries she sustained in the accident.
At the conclusion of the State's case, D.E. moved for a judgment of dismissal. He argued that the State failed to show *561 that he had operated the vehicle in a reckless manner, and asserted the frequently heard maxim that speed alone was not enough to sustain a finding of vehicular homicide. Although he admitted that his actions were careless, D.E. argued that the State failed to prove that he had operated his motor vehicle in such a reckless manner that it was likely to cause death or great bodily harm. He asserted, as well, that the State failed to show that he had acted with a willful or wanton disregard for the safety of persons or property.
The trial court denied the motion, finding that the State had presented sufficient evidence respecting each element of the offense. D.E. elected not to put on any evidence in his own behalf. His renewed motion for judgment of dismissal at the close of the evidence was also denied.
Under Rule 8.110(k), Florida Rules of Juvenile Procedure, a motion for judgment of acquittal in the adult criminal context is properly styled a motion for judgment of dismissal. See W.E.P. v. State, 790 So.2d 1166, 1169 n. 3 (Fla. 4th DCA 2001). The standard for ruling on a motion for judgment of dismissal is the same as ruling on a motion for judgment of acquittal. Id. at 1169-70. When moving for a judgment of acquittal, a defendant admits all the facts adduced at trial and every reasonable inference from the evidence which is favorable to the state. See State v. Law, 559 So.2d 187 (Fla.1989).
In reviewing on appeal the denial of a motion for judgment of acquittal we apply a de novo standard. See Huck v. State, 881 So.2d 1137, 1144 (Fla. 5th DCA 2004), review denied, 898 So.2d 80 (Fla.2005). An appellate court will generally not reverse a conviction that is supported by substantial, competent evidence. Id. If, after viewing the evidence in the light most favorable to the State, a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt, sufficient evidence exists to sustain a conviction. See Banks v. State, 732 So.2d 1065 (Fla.1999). Thus, a trial court's denial of a motion for judgment of acquittal will not be reversed on appeal if there is competent substantial evidence to support the jury's verdict. See Chamberlain v. State, 881 So.2d 1087, 1104 (Fla.2004), cert. denied, ___ U.S. ___, 125 S.Ct. 1669, 161 L.Ed.2d 495 (2005).
"Vehicular homicide is the killing of a human being, or the killing of a viable fetus by any injury to the mother, caused by the operation of a motor vehicle by another in a reckless manner likely to cause the death of, or great bodily harm to, another." See § 782.071, Fla. Stat. (2003). By definition, the crime cannot be proved without also proving the elements of reckless driving. See State v. Del Rio, 854 So.2d 692, 693 (Fla. 2d DCA 2003). Reckless driving is defined as driving with a willful or wanton disregard for safety. See Lewek v. State, 702 So.2d 527, 530 (Fla. 4th DCA 1997); § 316.192(1), Fla. Stat. (2003). "Willful" means "intentional, knowing, and purposeful," and "wanton" means with a "conscious and intentional indifference to consequences and with knowledge that damage is likely to be done to persons or property." See W.E.B. v. State, 553 So.2d 323, 326 (Fla. 1st DCA 1989) (quoting Fla. Std. Jury Instr. (Misd.) (reckless driving)).
The degree of culpability required to underpin reckless driving is less than that required for culpable negligence (the standard for manslaughter), but more than a mere failure to use ordinary care. See Michel v. State, 752 So.2d 6, 12 (Fla. 5th DCA 2000), review denied, 766 So.2d 222 (Fla.2000); State v. Esposito, 642 So.2d 25, 26 (Fla. 4th DCA 1994) (citing McCreary v. State, 371 So.2d 1024 (Fla. *562 1979)). Although a person does not have to foresee the specific circumstances causing the death of a victim in order to be guilty of vehicular homicide, the person must have reasonably foreseen that the same general type of harm might occur if he or she knowingly drove a vehicle under circumstances that would likely cause death or great bodily harm to another. See Michel, 752 So.2d at 12; W.E.B., 553 So.2d at 323. Thus, in determining whether a defendant was driving recklessly, the issue boils down to whether the defendant knowingly drove the vehicle in such a manner and under such conditions as was likely to cause death or great bodily harm. See Lewek, 702 So.2d at 531. The focus is, therefore, on the actions of the defendant, i.e., what were the circumstances under which the defendant knowingly drove, and was it reasonably foreseeable under those circumstances that death or great bodily harm could result. See Michel, 752 So.2d at 12. Some courts have noted that speed alone will not support a charge of vehicular homicide. See House v. State, 831 So.2d 1230, 1233 (Fla. 2d DCA 2002); Hamilton v. State, 439 So.2d 238 (Fla. 2d DCA 1983). While it may be time to reconsider that postulate, we need not do so in this case. There was well more than speed upon which to base the conviction.
Here, the evidence showed that the collision occurred before the sun had risen, near a school in a residential neighborhood familiar to D.E. at a time when traffic was likely to be congested. D.E. was operating his vehicle without adult supervision in violation of the state licensing law.[1] While some of the evidence regarding speed is conflicting, it appears that D.E. was traveling far in excess of the speed limit, and was unable to maintain his vehicle in a single lane. According to the testimony, his taking the curve at a perilously high rate of speed probably caused D.E. to jerk the wheel to the left, resulting in his loss of control of the vehicle. An expert opined that D.E. came out of the curve straddling the two northbound lanes because his speed would not allow him to maintain a single lane. Thus, it appears that D.E. knowingly drove the car without adult supervision in violation of state law, and knowingly traveled at a dangerously high speed around a dangerous curve in the road near a school in the dark through an area that was familiar to him, and that was likely to become congested. These facts amount to far more than just speeding.
This case bears some similarity to Hamilton v. State, 439 So.2d 238 (Fla. 2d DCA 1983). There, the evidence reflected that the defendant was driving in a residential area at a speed of 50 to 60 miles per hour when she struck two small children playing in the roadway. She testified that she did not see the children either before or after impact. No drinking was involved and there were no mechanical defects in her vehicle. The evidence also showed that it was a clear, dry day with good visibility; that she was traveling on a level two-lane roadway more or less in the middle of the road; that there were no obstructions to her view; that she was traveling in an area described by one of the investigating officers as heavily congested with children; that she was familiar with the area and roadway, having traveled it on other previous occasions; that the road was posted with both a 30 mph speed limit sign and a children playing sign; that the presence of children in the roadway was observed by several witnesses; that she failed to reduce the speed of her vehicle before or after she struck the children; and that she apparently failed to exercise even the slightest degree of care to avoid the collision. *563 The Second District Court of Appeal held that taking into account all of the factors, the evidence of grossly excessive speed in a congested residential area supported the conviction of vehicular homicide.
It seems to us that it was reasonably foreseeable that D.E.'s actions would cause a traffic fatality, taking into account all of the factors presented, including his excessive speed. See Michel, 752 So.2d at 12. Additionally, as the Florida Supreme Court has stated:
Where there is room for a difference of opinion between reasonable men as to the proof of facts from which an ultimate fact is sought to be established, or where there is room for such differences as the inferences which might be drawn from conceded facts, the court should submit the case to the jury for their finding, as it is their conclusion, in such case, that should prevail and not primarily the views of the judge. The credibility and probative force of the conflicting testimony should not be determined on a motion for judgment of acquittal.
Lynch v. State, 293 So.2d 44, 45 (Fla. 1974). We conclude that there was sufficient evidence to sustain the determination of delinquency for vehicular homicide.
AFFIRMED.
SHARP, W., and THOMPSON, JJ., concur.
NOTES
[1] See § 322.1615, Fla. Stat. (2002).