# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### August 16, 2005 Session

## STATE OF TENNESSEE v. SHANNON A. HOLLADAY

**Appeal from the Criminal Court for Anderson County**
**No. A4CR0044     James B. Scott, Jr., Judge**

---

### No. E2004-02858-CCA-R3-CD - Filed February 8, 2006

---

GARY R. WADE, P.J., concurring.

I agree with the majority that this case is not properly before this court for an appeal as of right pursuant to Tennessee Rule of Appellate Procedure 3 and that it does not qualify as an extraordinary appeal under Tennessee Rule of Appellate Procedure 10. I write separately because it is my view that the dismissal of the state appeal might imply that evidence obtained from a vehicle's event data recorder (the air bag sensor module) is generally inadmissible.

An "event data recorder" has been defined by the National Highway Traffic Safety Administration as "a device installed in a motor vehicle to record technical vehicle and occupant information for a brief period of time (seconds, not minutes) before, during and after a crash." Event Data Recorder Applications for Highway and Traffic Safety, http:/www-nrd.nhtsa.dot.gov/edr-site (last visited Feb. 2, 2006). The data recorded varies by model but commonly recorded information may include "(1) pre-crash vehicle dynamics and system status, (2) driver inputs, (3) vehicle crash signature, (4) restraint usage/deployment status, and (5) post-crash data such as the activation of an automatic collision notification (ACN) system." Id. The first such devices were available in the 1970's but were not installed on most passenger cars until twenty years later. Event Data Recorder Applications for Highway and Traffic Safety, http:/www-nrd.nhtsa.dot.gov/edr-site/history.html (last visited Feb. 2, 2006). In March of 2000, the Ventronix Corporation made its Crash Data Retrieval System, which is a device used to download information from event data recorders in General Motors vehicles, available for sale to the public. Id. Since that time, several courts have considered the admissibility of the information from event data recorders and concluded that it was admissible under the test established in Frye v. United States, 293 F. 1013 (D.C. Cir. 1923). See Matos v. State, 899 So. 2d 403, 407 (Fla. Dist. Ct. App. 2005); Bachman v. General Motors Corp., 776 N.E.2d 262, 281 (Ill. App. Ct. 2002). The Frye test was superceded in this state by the adoption of Tennessee Rules of Evidence 702 and 703. McDaniel v. CSX Transp., 955 S.W.2d 257, 265 (Tenn. 1997). Our supreme court has observed, however, that the test for admissibility under Rules 702 and 703 is "less restrictive" that the general acceptance test adopted in Frye. Id. at 262. In consequence, such evidence should be admissible in this state.

The issue in this case, however, is not the admissibility of the data under the Rules of Evidence but whether the data was gathered in a manner that violated the defendant's constitutional rights. The threshold inquiry is whether the defendant had a reasonable expectation of privacy in the information recorded by the event data recorder, which was referred to at trial as the air bag sensor module. In the trial court, the state stipulated that the defendant had an expectation of privacy. It has changed its position in this appeal. Because the determination as to whether a reasonable expectation of privacy exists is a legal conclusion, see United States v. Ramapuram, 632 F.2d 1149, 1155 (4th Cir. 1980), cert. denied, 450 U.S. 1030 (1981), this court is not bound by the state's concession, see State v. Jackson, 173 S.W.3d 401, 406 (Tenn. 2005) (holding that the standard of review for questions of law is de novo without a presumption of correctness).

The United States Supreme Court has held that when considering whether an individual has a reasonable expectation of privacy under the Fourth Amendment, a reviewing court must determine (1) "whether the individual, by his conduct, has 'exhibited an actual (subjective) expectation of privacy'" and (2) "whether the individual's subjective expectation of privacy is 'one that society is prepared to recognize as reasonable.'" Smith v. Maryland, 442 U.S. 735, 740 (U.S. 1979) (quoting Katz v. United States, 389 U.S. 347, 361 (U.S. 1967)). Our supreme court has applied the same analysis under article 1, section 7 of the Tennessee Constitution. See State v. Munn, 56 S.W.3d 486, 494 (Tenn. 2001).

In this case, the defendant's damaged vehicle was transported at the request of law enforcement to Lowe's Towing in Clinton following the accident. Trooper Fox, who had specialized training and possessed equipment with the capability of gathering the information contained in an event data recorder, testified that he retrieved the data as a part of the investigation into the accident. While conceding that his search was not a part of an inventory process, Trooper Fox described how he cut a two-inch hole in the carpet underneath the passenger's seat of the defendant's 2002 Chevrolet Cavalier in order to gain access to the event data recorder. He then loaded the data from the recorder onto his laptop computer using the Ventronix Crash Data Retrieval System.

The United States Supreme Court has consistently held that although "the interior of an automobile is not subject to the same expectations of privacy that exist with respect to one's home, a car's interior as a whole is nonetheless subject to Fourth Amendment protection from unreasonable intrusions by the police." New York v. Class, 475 U.S. 106, 114-115 (U.S. 1986); see also United States v. Rascon-Ortiz, 994 F.2d 749, 754-755 (10th Cir. 1993) (noting that "the exterior of a car does not constitute a search"); United States v. George, 971 F.2d 1113, 1119-1120 (4th Cir. 1992).

In some states, courts have held that when the vehicle is subject to regulation and inspection, the owner does not have a reasonable expectation of privacy in the component parts.[1] See, e.g.,

---

[1] In Maine, for example, the equipment subject to inspection includes body components, brakes, exhaust system, glazing, horn, lights and directional signals, rearview mirrors, reflectors, running gear, safety seat belts, steering

(continued...)

Massachusetts v. Mamacos, 568 N.E.2d 1139 (Mass. 1991); State v. McManus, 1995 Me. Super. LEXIS 416, 6-9 (Me. Super. Ct. 1995). Those states, unlike Tennessee, have statutes which require the annual inspection of all vehicles registered within the state. Because that extent of regulation of vehicles does not exist in this state, this court cannot conclude that the defendant did not have a reasonable expectation of privacy in the event data recorder, at least from this perspective.

Courts of other states, even those without significant regulation of registered vehicles, have concluded that an owner does not have a privacy interest in a vehicle that has been totally or partially destroyed. See United States v. Metzger, 778 F.2d 1195, 1199-1200 (6th Cir. 1985); State v. Jacoby, 907 So. 2d 676, 680-681 (Fla. Dist. Ct. App. 2005). In Michigan v. Clifford, which dealt with the warrantless entry into a home that had been destroyed by fire, the Unites States Supreme Court ruled that "[p]rivacy expectations will vary with the type of property, the amount of . . . damage, the prior and continued use of the premises, and in some cases the owner's efforts to secure it against intruders." 464 U.S. 287, 292 (1984). The high Court observed that "[s]ome fires may be so devastating that no reasonable privacy interests remain in the ash and ruins, regardless of the owner's subjective expectations." Id. In this case, however, there was no proof as to the extent of the damage to the defendant's vehicle. Thus, this court cannot conclude that the vehicle was so damaged as to remove the expectation of privacy in the vehicle's interior.

As indicated above, neither regulation by the state nor damage from the accident (none having been established by the state) diminished the defendant's expectation in the event data recorder, which was located in a non-visible portion of the vehicle's interior. See Class, 475 U.S. at 114-115 (observing that a reasonable expectation of privacy exists in those portions of the interior of a vehicle that are not visible to the public). In consequence, it is my view that the defendant had a reasonable expectation in the event data recorder.

Because the defendant had a reasonable expectation of privacy in the event data recorder, the question is whether the search was proper. Both the state and federal constitutions protect individuals from unreasonable searches and seizures; the general rule is that a warrantless search or seizure is presumed unreasonable and any evidence discovered subject to suppression. U.S. Const. amend. IV; Tenn. Const. art. I, § 7; Coolidge v. New Hampshire, 403 U.S. 443, 454-55 (1971); State v. Bridges, 963 S.W.2d 487, 490 (Tenn. 1997). The burden of establishing the legality of a warrantless search rests with the state. State v. Troxell, 78 S.W.3d 866, 868-869 (Tenn. 2002).

In this case, the prosecutor indicated at the hearing on the motion to suppress that the defendant's vehicle was seized at the scene of the accident as a part of the investigation. She stated that the vehicle was then towed to an impound lot used by the police. The defendant did not contest

---

[1](...continued)

mechanism, tires, windshield wipers, catalytic converter, and filler neck restriction. Further, the inspection of vehicles registered in certain counties includes the fuel tank cap and the on-board diagnostic system. Me. Rev. Stat. Ann. tit. 29, §1751 (2005).

the seizure of the vehicle and indicated that the only issue before the trial court was the taking of the data from the event data recorder.

The vehicle exception to the warrant requirement, first recognized in Carroll v. United States, 267 U.S. 132 (1925), is based upon mobile nature of vehicles and upon the lessened expectation of privacy in vehicles as compared to residences. See South Dakota v. Opperman, 428 U.S. 364, 367 (1976). When there is probable cause to believe that a vehicle contains evidence of a crime and "if there are exigent circumstances necessitating an immediate search and seizure," the warrantless search of a vehicle is permitted. See State v. Shrum, 643 S.W.2d 891, 893 (Tenn. 1982). The vehicle exception has been applied not only to the passenger compartment, but also to "a locked car trunk, a sealed package in a car trunk, a closed compartment under the dashboard, the interior of a vehicle's upholstery, [and] sealed packages inside a covered pickup truck." California v. Carney, 471 U.S. 386, 392 (U.S. 1985) (citations omitted). In Cormey v. Kentucky, the Kentucky Court of Appeals concluded that "[b]ecause a vehicle is subject to a warrantless search on probable cause if the vehicle contains evidence of a crime, the vehicle should likewise be subject to a warrantless seizure if the vehicle itself is an instrument of crime." 943 S.W.2d 629, 632 (Ky. Ct. App. 1996) ); see also Capraro v. Bunt, 44 F.3d 690, 691 (8th Cir. 1995); M.C.J. v. State, 444 So. 2d 1001, 1003-1004 (Fla. Dist. Ct. App. 1984). The defendant's car contained evidence of a possible crime and, in my view, was an instrument of any possible crime. Based upon these authorities, it is my view that the seizure of the defendant's vehicle immediately following the crash did not violate constitutional protections against unreasonable search and seizure.

Finally, when the police retain rightful custody of a vehicle, they may conduct any necessary testing. See State v. McDonald, 872 P.2d 627, 642 (Alaska App. 1994) ("[I]f the initial seizure was upon probable cause that the item would be of evidentiary value, it may be tested and examined for the purpose [of] maximizing its value in this respect."). It is my view that any testing would necessarily include an analysis of the information stored in the event data recorder. Police routinely and properly conduct testing of items taken into evidence and, under these circumstances, a vehicle is no different. Accordingly, it is my view that the search was not unconstitutional.

_____
GARY R. WADE, PRESIDING JUDGE