## 48375. BROWN v. THE STATE.

Pannell, Judge. Leon Elbert Brown was charged by the Grand Jury of Hall County, Ga., with seven counts of murder because of an automobile collision which occurred on October 8, 1972, between a Buick Station Wagon and a Ford automobile, which was occupied by the defendant and his cousin, Armour. The deceased individuals mentioned in the respective Counts 1 through 7 were in that order, as follows: Mellie M. Grier, Bernice Grier, Stanley Grier, James A. Grier, Joyce Poole, Cheryl Grier and Dorothy Elise Grier. These individuals were alleged to have been in the Buick Station Wagon. On each count the defendant was found guilty of "involuntary manslaughter of a lawful act in an unlawful manner." The sentence on Count 1 was for a period of 12 months. The sentence on the remaining counts was for the same period of time, but to run consecutively with the sentence on the prior numbered indictment. *Held:*

1. The evidence shows a Ford automobile owned by Brown was being used by Brown and one Armour, and that on the occasion in question it collided with a Buick Station Wagon killing and

injuring some of the occupants thereof. The evidence authorized a finding the Ford was driven over a particular route and that at certain parts along that route the Ford was driven at an excessive rate of speed and at times running off the road and back on again, as well as at the time of the collision of the Ford with the Buick Station Wagon on the left side of the highway relative to the Ford automobile. There was evidence that the defendant Brown was drinking excessively and that his blood tested .19 in a test administered approximately an hour after the collision. While Brown, in his statement to the jury, stated that he got sick, got in the back seat of the Ford automobile and passed out, and remembered nothing else until he awoke in the hospital. There was evidence that subsequently thereto the one with the "long hair" was driving the automobile (the evidence showed Brown's hair was long, almost to his shoulders, and that Armour's hair was short) and that the Ford automobile was being driven at excessively fast speed and in a reckless manner. There was also evidence of injuries to Brown and Armour which would authorize a jury to conclude Brown was the driver, although Armour was on the driver's side after the collision. The testimony showed the Ford made a complete turn over from front to rear in the air, landed and then rolled down an embankment and when it stopped was resting upside down on its top. Brown, when first seen, was crawling around inside on the top. The evidence was sufficient to authorize a finding that Brown was the driver of the Ford, and criminally responsible for the collision and any resulting death or injuries.

2. Even should we assume that the evidence would demand a finding that Armour was driving the Ford at the time of the collision and prior thereto, and after the stop where the defendant said he got on the back seat because he was sick, and then passed out; and that Armour, therefore, did the driving from there on; and should we further assume there was no evidence showing, or tending to show, that Brown was directing Armour in the operation of the automobile and there was no evidence that Brown was aiding, abetting, or concurring in the unlawful manner in which it was being operated, *except the following facts which the jury was authorized to find from the evidence,* we could not hold the evidence was insufficient to authorize the verdict. While Brown says he stayed on the back seat and passed out and knew nothing of their ride (which, if undisputed, would have brought him within the ruling in *Lash v. State,* 97 Ga. App. 622 (103 SE2d 653)), the jury was authorized

to find that he had gotten back on the front seat with Armour, the driver; that Brown owned the Ford automobile and that they were both on the front seat during a portion of the wild and excessively speedy ride; and that both were on the front seat immediately prior to the impact; and that Brown was present and conscious during this period of time, otherwise he would not have gotten back into the front seat, "and there is nothing to indicate that he remonstrated with" Armour "or attempted to prevent him from running at the high" and reckless manner and speed for the last several miles before the collision. "Under these circumstances, we are of the opinion that the owner of the car was in control thereof, and that he should have seen to it that his" driver "did not operate the car in such a manner contrary to law as might produce such a consequence in an unlawful manner as that which happened on this fateful occasion. It must be held, therefore, that the owner of the car must have known, and did know, that it was being operated contrary to law, and that he consented and agreed to the running of the car at such a high rate of speed" and in such a reckless manner; "and that being true, is responsible for what happened in consequence of such violation of the law. It would be the owner's duty, when he saw that the law was being violated and his machine was being operated in such a way as to be dangerous to the life and property of others on the highway, to curb and restrain one . . . in his control and prevent him from violating the law with his own property. The owner of the automobile was bound to know that it was very dangerous for his" driver "to run and operate the car at" 70 to 80 and more miles per hour along a public highway, and at times running off the road. "The owner of the automobile was bound to know that the car operated at such a place and in such a manner was liable to come in collision and injure occupants of other automobiles upon the highways; and that being so, he was equally guilty with his" driver "in causing the homicide in question, although he may have had no intention of injuring or killing" anyone. *Moreland v. State,* 164 Ga. 467, 472 (139 SE 77). Under these circumstances and in view of the rulings by the Supreme Court in the cited cases, we must hold the evidence was sufficient to authorize a verdict against Brown for criminal responsibility for the collision of the Ford with the Buick Station Wagon even though he was not driving the Ford.

3. Accordingly, there was no error in the charges of the court given in accordance with the theory of guilt in Division 2, above, as to the grounds urged, and even if error, the errors were harmless

as the charges were more favorable to the defendant than the evidence authorized.

4. While there was ample evidence to hold Brown criminally responsible for the collision and any resulting death and injuries, the state, except for two of the deceased parties (Stanley Grier and James A. Grier) failed to show that the parties named in Counts 1, 2, 5, 6, and 7 were in the Buick Station Wagon or died as the result of injuries received in this collision. While there was ample evidence that other people were in the Buick and possibly that some were dead at the scene, none of these was identified by the evidence. While the physician who saw and treated some people who were brought into the hospital identified them by name, and they were the same names as in Counts 1, 2, 5, 6 and 7 of the indictment, there was no evidence they were in the Buick or that they were injured in the collision between the Buick and the Ford. And although this same physician at the hospital testified their injuries, from which they died, were in his opinion caused by an auto collision, there was no evidence that this was the only collision or accident from which people were carried to the hospital. On the contrary, there was evidence by a state trooper that people from other accidents were being brought in to the same hospital. The only connection, therefore, is the similarity of names and that they were injured in an automobile collision. While the attorney for the defendant, in his opening statement to the jury, stated in substance that these particular named individuals were killed in this collision, this was but a statement of what he expected the evidence to show. Without proof of the corpus delicti as to these counts of the indictment, a conviction is unauthorized. *Tatum v. State,* 1 Ga. App. 778 (57 SE 956); *Williams v. State,* 125 Ga. 741 (54 SE 661); *Bines v. State,* 118 Ga. 320 (45 SE 376); *Brown v. State,* 15 Ga. App. 484 (83 SE 890); *Edwards v. State,* 213 Ga. 552 (100 SE2d 172). Even if the statement of defendant's attorney be construed as an admission, the corpus delicti must be independently proven. See *Williams v. State,* 96 Ga. App. 833 (101 SE2d 747).

5. Where one is charged with the homicide of different people in different counts and is found guilty on each count, he may be sentenced separately on each count to run consecutively for the reason that the killing of different persons constitutes separate crimes even though done at the same time with one stroke of the same death-dealing instrument. While the stroke was one transaction, the killing of different persons with that stroke constitutes several criminal transactions. We do not have here

a lesser and a greater offense situation (*Mobley v. State*, 101 Ga. App. 317 (113 SE2d 654)) or varying degrees of the same crime (*Davis v. State*, 100 Ga. App. 308 (111 SE2d 116)), or the same crime committed in various ways. See *Tooke v. State*, 4 Ga. App. 495, 503 (61 SE 917). As is stated in Code § 26-506 (a): "When the same conduct of an accused may establish the commission of more than one crime, the accused may be prosecuted for each crime." None of the remaining provisions of paragraph (a) apply to the present case, as neither of the crimes of murder is included in the other, nor do the several crimes of murder differ only in that one is designed to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct.

6. For the reasons given, the judgments of conviction and sentence as to Counts 1, 2, 5, 6 and 7 of the indictment are reversed, and the judgments of conviction and sentence as to Counts 3 and 4 are affirmed.

*Judgments reversed in part; affirmed in part. Eberhardt, P. J., and Stolz, J., concur.*

ARGUED JUNE 29, 1973 — DECIDED SEPTEMBER 27, 1973.

*Smith & Millikan, Troy R. Millikan,* for appellant.
*Jeff C. Wayne, District Attorney, Robert W. Lawson, Jr.,* for appellee.