S08A1489. HOOKS v. THE STATE.
(668 SE2d 718)

CARLEY, Justice.

Alton Hooks was charged with two counts of malice murder, two alternative counts of felony murder involving the same victims, two counts of aggravated assault with a deadly weapon, and one count of possession of a knife during the commission of a felony. The State did not file a notice of intent to seek the death penalty. A jury found Hooks guilty on all counts. The trial court merged the aggravated assault counts into the murder counts and entered judgment of conviction for each of the remaining counts. Based on OCGA § 17-10-7 (c), the trial court sentenced Hooks as a recidivist to four consecutive terms of life imprisonment without parole for the murder counts. The trial court also sentenced Hooks to a five-year term on the weapons charge.

After Hooks filed a motion for new trial, the State offered to allow Hooks to be re-sentenced on the murder counts to only two consecutive sentences of life imprisonment with the possibility of parole. At a hearing, defense counsel expressed Hooks' desire to accept the State's offer and stated that "he would waive all further motions and appeals and any other appellate remedies that may be available to him . . . in exchange for this re-sentencing." Upon questioning by the trial court, Hooks acknowledged his own understanding of the re-sentencing and his agreement not to pursue those matters raised in the motion for new trial. The trial court re-sentenced Hooks as agreed. Thereafter, Hooks withdrew the motion for new trial, stating that "it was agreed by all parties that the motion would be withdrawn by [him] in light of the consent modification to his earlier sentence of life without parole . . . ."

About four years later, Hooks filed a pro se motion to vacate void sentences and a motion for out-of-time appeal, contending that the trial court erred in imposing multiple sentences in a single prosecution for offenses which were the same as a matter of fact and law, and in finding a valid waiver of Hooks' rights to a motion for new trial and an appeal in exchange for the removal of void sentences. Hooks also asserted that defense counsel rendered ineffective assistance by advising him to waive those rights when the trial court had an inherent duty to remedy the imposition of a punishment which the law does not allow. The trial court denied the motion, stating that Hooks "waived all further motions and appeals and any other

appellate remedies that may be available to him, in exchange for re-sentencing from life without parole to life." Hooks directly appeals pro se from that order. See *Chester v. State*, 284 Ga. 162 (664 SE2d 220) (2008); *Simmons v. State*, 276 Ga. 525, fn. 2 (579 SE2d 753) (2003).

1. Hooks contends that the trial court erred by failing to sentence him in accordance with statutory requirements. Regardless of whether Hooks validly waived his appellate rights, he nonetheless was entitled to challenge his sentences as void or illegal. See *Baker v. State*, 284 Ga. 280 (663 SE2d 261) (2008); *Weatherbed v. State*, 271 Ga. 736 (524 SE2d 452) (1999); *Hall v. State*, 291 Ga. App. 649, 651 (662 SE2d 753) (2008).

As the trial court recognized, the initial murder sentences were improper. Because there were only two victims, there could not be four murder convictions, and "the separate sentences on the two alternative felony murder counts [were required to] be vacated." *Malcolm v. State*, 263 Ga. 369, 372 (4) (434 SE2d 479) (1993). Thus, the trial court properly corrected the judgments and imposed life sentences only on the malice murder counts. See *Jennings v. State*, 282 Ga. 679 (653 SE2d 17) (2007). The corrected sentences also correctly permitted the possibility of parole. Because "murder is a capital felony and OCGA § 17-10-7 (c) expressly excepts from its purview capital felonies, it follows that a sentence under that Code section is a punishment which the law does not allow to be imposed for murder." *Funderburk v. State*, 276 Ga. 554, 555 (2) (580 SE2d 234) (2003). See also *Miller v. State*, 283 Ga. 412, 417 (5) (658 SE2d 765) (2008).

> Although a sentence of life imprisonment without possibility of parole may be imposed for murder, either as a recidivist sentence under OCGA § 17-10-7 (b) (2), which requires that the defendant be previously convicted of a serious violent felony (see OCGA § 17-10-6.1 (a)), or as an alternative sentence when the death penalty is sought (see OCGA § 17-10-31.1), neither of those circumstances is present in this case.

*Funderburk v. State*, supra at 555 (2), fn. 2. See also *State v. Ingram*, 266 Ga. 324 (467 SE2d 523) (1996). Compare *Henry v. State*, 279 Ga. 615, 618 (6) (619 SE2d 609) (2005).

Hooks nevertheless complains that only one conviction and sentence was permissible, and that all of the remaining convictions and sentences are void, because there was a single prosecution and the same evidence was used to prove all charges. Although Hooks' appellate brief is somewhat confusing, it is clear that his argument is

heavily based upon OCGA §§ 17-10-6.1 (d) and 17-10-7 (d). Those subsections provide when conviction of two or more crimes is deemed to be only one conviction for the purpose of each code section. The provision in OCGA § 17-10-6.1 (d) is part of the definition of "a first conviction of any serious violent felony," which is punishable pursuant to subsection (c) of the statute. The purpose of OCGA § 17-10-7 (d) is to clarify how to count prior convictions when applying the recidivist punishments set forth in other subsections of that statute. See *Philmore v. State*, 263 Ga. 67, 70 (6) (428 SE2d 329) (1993); *Stone v. State*, 245 Ga. App. 728 (538 SE2d 791) (2000). Thus, neither statute is relevant in determining issues of merger, which are governed by OCGA §§ 16-1-6 and 16-1-7 (a).

In arguing merger, Hooks mistakenly applies the "actual evidence" test. This Court adopted the "required evidence" test in *Drinkard v. Walker*, 281 Ga. 211, 217 (636 SE2d 530) (2006). Moreover, under either test, the trial court clearly was authorized to impose consecutive life sentences for both counts of malice murder. Where, as here, a defendant is charged with the homicide of separate victims "in different counts and is found guilty on each count, he may be sentenced separately on each count to run consecutively for the reason that the killing of different persons constitutes separate crimes . . . .' " *Cox v. State*, 243 Ga. App. 668, 669 (533 SE2d 435) (2000). See also *Brown v. State*, 129 Ga. App. 743, 746 (5) (201 SE2d 14) (1973). Furthermore, the conviction for possession of a knife during the commission of a felony does not merge into the convictions for malice murder. *Chester v. State*, supra at 162 (1).

Accordingly, we conclude that the corrected sentences entered by the trial court are not void for any reason which has been asserted by Hooks, and that the denial of the motion to vacate void sentences must be affirmed. *Chester v. State*, supra.

2. Hooks further contends that he did not knowingly, voluntarily, and intelligently waive his rights to appellate review in exchange for the trial court's performance of its inherent judicial duty to vacate void sentences and impose a statutorily authorized sentence. The State's only response is to request that this Court remand the case to the trial court for a determination of Hooks' appellate rights.

> Georgia allows a defendant to enter into a negotiated agreement to forego the right to seek post-conviction relief as a means to serve the interests of the State and the defendant in achieving finality. [Cit.] In particular, this Court has held that a criminal defendant may waive his statutory right to appeal a conviction in exchange for the State's agreement not to seek the death penalty at sentencing, so long as the waiver is voluntary, knowing, and

intelligent. [Cits.] The fact that a waiver of the right to appeal is voluntary, knowing, and intelligent may be shown in two ways. First, a signed waiver may indicate that the defendant understands the right he is waiving. Second, and more important, detailed questioning of the defendant by the trial court that reveals that he was informed of his right to appeal and that he voluntarily waived that right is sufficient to show the existence of a valid, enforceable waiver. [Cit.]

*Rush v. State*, 276 Ga. 541, 542 (579 SE2d 726) (2003). When there has been a proper showing, the defendant and the State are held to their bargain. *Thomas v. State*, 260 Ga. 262, 264 (392 SE2d 520) (1990). Thus, contract principles apply to sentencing agreements, regardless of whether the death penalty is involved, just as they do to immunity and plea agreements. See *State v. Hanson*, 249 Ga. 739, 746 (3) (295 SE2d 297) (1982) ("While a slavish adherence to contract law should be avoided, we find that analysis of the [immunity] agreement as a contract between the prosecutor and [the accused] is useful."); *Carr v. State*, 282 Ga. App. 134, 136 (637 SE2d 835) (2006) (the defendant "elected to accept the State's offer and a contract was thereby created. [Cit.] The parties 'made a bargain.' "); *Martin v. State*, 207 Ga. App. 861, 862 (429 SE2d 332) (1993) (a plea bargain " 'agreement may be considered as a contract. . . .' "); *State v. Butts*, 679 NE2d 1170, 1172 (Ohio App. 1996) (a sentencing "agreement, like a plea agreement, is a valid contract with the state"); *Cubbage v. State*, 498 A2d 632, 638 (1) (Md. 1985) ("This reasoning is equally applicable to one who faces sentencing after having been found guilty and who bargains for sentencing advantages in consideration of a waiver of appeal.").

In accordance with such contract principles, one Georgia commentator has stated that a sentencing "agreement presupposes that the State has valid statutory grounds for [the more severe sentence which it forgoes]. If not, then it could in all likelihood not be enforced against the defendant because of lack of consideration." McFadden, Brewer & Sheppard, *Ga. Appellate Practice* (2nd ed.), § 19-7, p. 495, fn. 8. In examining whether a waiver of appeal rights was voluntary, knowing, and intelligent, this Court has at least implied that the agreement must not be illusory. *Rush v. State*, supra ("Having received the benefit of the agreement, [the defendant] cannot now ignore its terms and seek relief via an appeal to this Court."); *Thomas v. State*, supra ("the terms of the agreement were highly favorable to the [defendant, who] avoided any possibility of [the more severe sentence] because of the agreement."). Other courts have directly addressed on the merits an assertion of inadequate consid-

eration in return for a waiver of appellate rights. *United States v. Hernandez*, 134 F3d 1435, 1437-1438 (10th Cir. 1998); *State v. Butts*, supra. In the context of plea negotiations, the rule is that "[a] prosecutor may not induce a plea through a meaningless or illusory promise." *Prosecutorial Misconduct* § 7:4 (2nd ed.). Moreover, a guilty plea is not voluntary unless it is entered by one who is " 'fully aware of . . . the actual value of any commitments made to him by the court [or] prosecutor . . . .' [Cit.]" (Emphasis omitted.) *State v. Copeland*, 765 P2d 1266, 1274 (V) (Utah 1988) (quoting *Brady v. United States*, 397 U. S. 742, 755 (90 SC 1463, 25 LE2d 747) (1970)). Conversely, if the prosecutor agrees to forgo a charge or a sentence which the defendant correctly understands to be otherwise applicable to him, then "[t]he value of the bargain to [the] defendant [is] genuine, valid, and known to" him, he makes the agreement "in full apprehension of the value of the commitments made to him," and that agreement cannot be challenged as being the result of an illusory bargain. *People v. Peters*, 291 NW2d 133, 134 (Mich. App. 1980).

In this case, however, the murder sentences originally imposed on Hooks were void and, thus, were not ever enforceable against him. *Funderburk v. State*, supra. Moreover, Hooks did not execute any signed waiver and, at the re-sentencing hearing, was never informed that he was not required to waive his appellate rights in order to obtain relief from the void sentences. There was not "detailed questioning of the defendant by the trial court that reveals that he was [fully] informed of his right to appeal . . . . [Cit.]" *Rush v. State*, supra. See also *United States v. Randolph*, 230 F3d 243, 251 (II) (A) (6th Cir. 2000) (defendant was "represented by counsel when he entered into [a] plea agreement; nonetheless we cannot say that he entered into it knowingly or voluntarily, since he was in no way informed as to the illusory nature of the government's promise"). Hooks purportedly waived his appellate rights in exchange for new sentences which are not void, but which nevertheless constitute the most severe punishment possible for the murder of two persons where, as here, the death penalty is not sought and sentencing as a recidivist is not available. In these circumstances, he received only that to which he was already entitled as a matter of law. Accordingly, the sentencing agreement did not have any genuine value to Hooks, was not knowingly made "in full apprehension of the value of the commitments made to him" and, therefore, was the result of an illusory bargain. See *Commonwealth v. Lantzy*, 736 A2d 564, 572-573 (Pa. 1999); *Prosecutorial Misconduct*, supra ("Similarly illusory is a promise to recommend concurrent sentences when consecutive sentences cannot legally be imposed. [Cit.]"). Compare *People v. Peters*, supra.

Because the record reveals that, as a matter of law, Hooks did not validly waive his appellate rights, the denial of the motion for out-of-time appeal "must be reversed, and the case 'returned to the (trial) court with direction to authorize an out-of-time appeal from'" the judgments of conviction entered against Hooks. *Cobb v. State,* 284 Ga. 74, 75 (663 SE2d 262) (2008).

*Judgment affirmed in part and reversed in part and case remanded with direction. All the Justices concur.*

DECIDED OCTOBER 27, 2008.

Alton Hooks, *pro se.*

*Paul L. Howard, Jr., District Attorney, Christopher M. Quinn, Bettieanne C. Hart, Assistant District Attorneys,* for appellee.