**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-6832**

RONALD DONALD DINGLE,

Petitioner - Appellant,

v.

WARDEN ROBERT M. STEVENSON,

Respondent - Appellee.

Appeal from the United States District Court for the District of South Carolina, at Florence. Bruce H. Hendricks, District Judge. (4:13-cv-02487-BHH)

Argued: September 20, 2016          Decided: October 25, 2016

Before WILKINSON, MOTZ, and HARRIS, Circuit Judges.

Affirmed by published opinion. Judge Wilkinson wrote the opinion, in which Judge Motz and Judge Harris joined.

**ARGUED**: Stephen J. van Stempvoort, MILLER JOHNSON, Grand Rapids, Michigan, for Appellant. Alphonso Simon, Jr., OFFICE OF THE ATTORNEY GENERAL OF SOUTH CAROLINA, Columbia, South Carolina, for Appellee. **ON BRIEF**: Alan Wilson, Attorney General, John W. McIntosh, Chief Deputy Attorney General, Donald J. Zelenka, Assistant Deputy Attorney General, OFFICE OF THE ATTORNEY GENERAL OF SOUTH CAROLINA, Columbia, South Carolina, for Appellee.

WILKINSON, Circuit Judge:

More than twenty years ago, Ronald Donald Dingle was indicted for murder and a host of other crimes committed while he was a minor. The state of South Carolina intended to seek the death penalty against him, and Dingle pled guilty in exchange for a life sentence with the opportunity for parole.

Dingle now seeks to challenge the validity of his guilty plea and appeals the district court's denial of relief on his 28 U.S.C. § 2254 petition. We granted a certificate of appealability on the limited issue of whether Roper v. Simmons, 543 U.S. 551 (2005), which invalidated the death penalty for juvenile offenders, may be applied retroactively to invalidate Dingle's guilty plea. We hold that Roper does not provide an avenue for relief and affirm the district court's dismissal of his federal habeas petition.

I.

While the procedural posture of this case is something of a tangle, the facts relevant to the issue on which we granted the certificate are relatively straightforward.

On March 15, 1993, Dingle, a seventeen-year-old juvenile at the time of the offense, was charged by the state of South Carolina with murder, assault and battery with intent to kill, first-degree burglary, kidnapping, pointing a firearm, two counts of possession of a weapon during a violent crime, and two

2

counts of possession of a sawed-off shotgun. The state filed a notice of intent to seek the death penalty, and on April 17, 1995, Dingle pled guilty to all the charges in exchange for life imprisonment with the possibility of parole. Although the trial judge sentenced Dingle to consecutive terms of imprisonment following the initial life sentence for murder, all parties agreed that Dingle should be eligible for parole after thirty years.

As it turned out, however, the consecutive nature of Dingle's sentences precluded any possibility of parole. Dingle filed an application for post-conviction relief ("PCR"), asserting that the prospect of parole eligibility was an integral element of the plea bargain. On December 5, 1997, the PCR court vacated the sentences and remanded "for sentencing consistent with the intent of the plea agreement or for a new trial." J.A. 338.

After several years went by without a hearing, Dingle filed a motion for speedy trial in the Sumter County Court of General Sessions. In the meantime, the Supreme Court decided Roper v. Simmons, 543 U.S. 551 (2005), which held that imposing capital punishment on juvenile offenders was a violation of the Eighth Amendment. At the hearing on July 28, 2005, Dingle argued that he should be allowed to withdraw his guilty plea because, in

light of Roper, he no longer received the benefit of a bargain premised on avoiding the death penalty.

The Court of General Sessions rejected Dingle's request for a new trial. Rather, the court determined that the plea should be evaluated based on the law as it existed in 1995 – the court could give him the benefit of his bargain by restructuring the sentence such that he would be eligible for parole after thirty years. Dingle appealed and the South Carolina Supreme Court rejected the claim that Roper deprived him of the benefit of his plea deal. State v. Dingle, 659 S.E.2d 101, 106 (S.C. 2008).

On January 8, 2009, Dingle filed a second application for PCR. This time, he argued that Roper applied retroactively to his case and that his guilty plea was involuntary because it was made for the sole purpose of avoiding cruel and unusual punishment. The PCR court found that the essence of Dingle's Roper claim was already raised and ruled upon by the South Carolina Supreme Court. Accordingly, it was barred by res judicata. Dingle unsuccessfully appealed the PCR court's order, and filed a third application for PCR that was later dismissed.

Dingle also filed a petition under 28 U.S.C. § 2254 for a writ of habeas corpus in the United States District Court for the District of South Carolina. In his petition, Dingle raised four claims of error. On November 10, 2009, the district court dismissed the claims without prejudice.

4

On September 13, 2013, Dingle filed the instant § 2254 petition. He contested his conviction on six grounds, including various assertions of ineffective assistance of counsel and prosecutorial misconduct. The magistrate judge recommended denying the petition in its entirety, rejecting some of the claims on the merits and finding that others were procedurally defaulted. The district court adopted the magistrate judge's report and recommendation and denied relief on Dingle's § 2254 petition. This court granted a certificate of appealability on a single issue: "whether Roper v. Simmons, 543 U.S. 551 (2005), may be applied retroactively to invalidate Dingle's guilty plea where, pre-Roper, he allegedly pled guilty to avoid the death penalty." We denied a certificate as to all other claims.

## II.

Dingle's primary contention is that his guilty plea should be abrogated in light of Roper's holding that the death penalty may not be imposed on juvenile offenders. He asserts, first, that Roper articulated a substantive rule that applies retroactively to his case, see Montgomery v. Louisiana, 136 S. Ct. 718, 734 (2016) ("Miller is no less substantive than are Roper and Graham."), and, second, that if the state cannot seek the death penalty against him now, it was improper for the state to do so in 1995. Accordingly, because the plea agreement was

5

motivated by a desire to avoid cruel and unusual punishment, Dingle argues that his plea was involuntary and invalid.

In resolving this question, we reiterate that this appeal does not raise such issues as ineffective assistance of counsel or prosecutorial misconduct in the plea negotiations. The court was careful to limit the certificate of appealability to the Roper claim and to deny a certificate to all remaining claims, many of which are better suited for and have been addressed in other proceedings. The case that comes before us is a pure question of law: whether Roper, of its own force as a substantive rule, applies retroactively to undo a guilty plea.

There are several difficulties with this argument, which we address in turn.*

A.

The Supreme Court in Roper announced a distinct constitutional rule prohibiting the imposition of the death penalty on juvenile offenders. Roper, 543 U.S. at 568. In so doing, however, the Court was careful to limit the scope of this

---

\* The state argues that AEDPA's deferential standard of review governs this action. AEDPA, however, applies only to claims that have been "adjudicated on the merits in State court proceedings," 28 U.S.C. § 2254(d) (2012), and there is some dispute as to whether South Carolina courts actually decided Dingle's Roper claim on the merits. Because we would affirm the district judge in all events, we will apply de novo review to this case.

6

constitutional bar to the "most severe punishment" of a capital sentence, where the Eighth Amendment applies with "special force." Id. The Court therefore made clear that its holding should be construed to apply only to the sentence actually at issue in that case, which was capital punishment.

Dingle nonetheless argues that Roper is a substantive rule and should apply retroactively to invalidate his guilty plea. This contention, however, compares apples and oranges. We readily grant that Roper announced a substantive rule, but that does not decide the outcome of the case at hand. The inescapable fact is that Dingle did not receive the death penalty. Nor did he receive a life sentence without parole. See Miller v. Alabama, 132 S. Ct. 2455 (2012). Rather, Dingle received a life sentence with the possibility of parole after thirty years. In essence, Dingle seeks to extrapolate from the distinct constitutional right recognized in Roper to a much broader substantive rule that extends to plea agreements negotiated in the shadow of the death penalty.

The district court correctly found that Roper did not apply to situations where a defendant pled guilty to a non-capital sentence to avoid the possibility of a capital sentence. Dingle v. Stevenson, 772 F. Supp. 2d 734, 740 (D.S.C. 2009). The death penalty here operated only as part of the calculus in the plea negotiations, and acknowledging that Roper might have altered

7

the calculus is a far cry from finding that its substantive rule applies. It happens in the ordinary give and take of a plea bargain that a substantive rule may indirectly bear on the outcome of the negotiation. Yet the Supreme Court has not suggested that a substantive rule would stretch beyond the proscribed sentence to reopen guilty pleas with a different sentence. See Montgomery v. Louisiana, 136 S. Ct. 718 (2016). Rather, when a defendant pleads guilty based on the strength of the state's case and an assessment of the range of penalties to which he might otherwise be exposed, we have been especially reluctant to rescind the bargain. See United States v. Fugit, 703 F.3d 248, 253 (4th Cir. 2012) (citing United States v. Dominguez Benitez, 542 U.S. 74, 82-83 (2004)). Pleading guilty typically entails a deliberate choice to accept the risks and rewards of a deal, and that decision may not be casually set aside on the basis of buyer's remorse.

B.

This precise principle was put in play in Brady v. United States, 397 U.S. 742 (1970). There, as here, a criminal defendant was death eligible and entered into a plea agreement to avoid capital punishment. Subsequent legal developments would have made the defendant ineligible for the death penalty, and the defendant urged on that basis that he be permitted to withdraw his plea. Id. at 756 (citing United States v. Jackson,

8

390 U.S. 570 (1968)). The Court rejected that contention, and its language is worth quoting because it is highly pertinent here:

> Often the decision to plead guilty is heavily influenced by the defendant's appraisal of the prosecution's case against him and by the apparent likelihood of securing leniency should a guilty plea be offered and accepted. Considerations like these frequently present imponderable questions for which there are no certain answers; judgments may be made that in the light of later events seem improvident, although they were perfectly sensible at the time.

Id. at 756-57.

> And again:

> The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision. . . . More particularly, absent misrepresentation or other impermissible conduct by state agents, a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise.

Id. at 757 (citation omitted).

> And again:

> The fact that Brady did not anticipate United States v. Jackson does not impugn the truth or reliability of his plea. We find no requirement in the Constitution that a defendant must be permitted to disown his solemn admissions in open court that he committed the act with which he is charged simply because it later develops that the State would have had a weaker case than the defendant had thought or that the maximum penalty then assumed applicable has been held inapplicable in subsequent judicial decisions.

Id. (citation omitted).

9

Brady is remarkable not only for the fact that the Court emphatically repeated its holding, but that it managed to drive the point home in so many different ways. Dingle tries to assert that the coercion involved in his plea negotiation was uniquely debilitating because he "knuckl[ed] under threat" of what we now understand to be cruel and unusual punishment. App. Br. at 24. But the logic in Brady applies generally, regardless of the reason that a defendant is no longer death eligible. See Brady, 397 U.S. at 755 ("[A] plea of guilty is not invalid merely because entered to avoid the possibility of a death penalty.").

Contracts in general are a bet on the future. Plea bargains are no different: a classic guilty plea permits a defendant to gain a present benefit in return for the risk that he may have to forego future favorable legal developments. Dingle received that present benefit – avoiding the death penalty and life without parole - under the law as it existed at the time. Although Roper, in hindsight, altered the calculus underlying Dingle's decision to accept a plea agreement, it does not undermine the voluntariness of his plea. Some element of pressure exists in every deal, as the tradeoff between present certainty and future uncertainty is emblematic of the process of plea bargaining. Brady makes all that exceptionally clear and in following its teachings we find no infirmity in the plea that Dingle entered.

10

## III.

The judgment of the district court is accordingly

AFFIRMED.