306 Ga. 235
FINAL COPY

S19A0047.  BRANT v. THE STATE.

WARREN, Justice.

Joseph Brant appeals from several trial court orders.  But because we conclude that Brant's plea agreement with the State precludes him from appealing the trial court's orders, we dismiss the appeal.

This case has a complicated history that we do not need to recount in full to decide this appeal.  The following facts are relevant here: on July 6, 1994, a Bacon County grand jury indicted Brant for malice murder, felony murder, armed robbery, and four other crimes, all stemming from Brant's theft of a vehicle that he used to drive to a convenience store, where he shot and killed Jackie Darlene Thomas on June 22, 1994.  Brant was 17 years old at the time of the crimes.  On May 1, 1996, the State filed a notice of intent to seek the death penalty for malice murder, specifying four aggravating circumstances.

In December 1999, Brant, who was represented by counsel, entered into a negotiated plea agreement with the State. The plea agreement provided, among other things, that the State waived the death penalty as a potential sentence and agreed to recommend that the trial court sentence Brant to life without parole on malice murder and to a consecutive life sentence with the possibility of parole for armed robbery. The agreement also expressly provided that Brant "waives any and all rights to appeal and will not file, or caused to be filed, any appeal" and "waives and agrees not to seek any post-conviction relief from the sentence imposed pursuant to this contract." At the plea hearing, the trial court asked Brant if he understood that he was waiving his right of direct appeal and his rights to "any post conviction or collateral attack" upon "the guilty plea or sentence." Brant replied that he understood. Consistent with the agreement, at the end of the plea hearing, the State recommended — in addition to terms of years for four other offenses — sentences of life without the possibility of parole for malice murder and "life in prison" for armed robbery, to be served

consecutively to the sentence imposed for malice murder. The court then orally announced that it would sentence Brant to life without the possibility of parole for malice murder and to "imprison[ment] for life" for armed robbery, "to run consecutive to the sentence imposed" for malice murder. On December 21, the trial court accepted Brant's guilty pleas and followed the State's sentencing recommendations — except that for armed robbery, the court sentenced Brant to life in prison without the possibility of parole instead of "imprisonment for life," as the State had recommended and as the court had pronounced earlier.

In subsequent orders entered in 2014 and 2016, the trial court (1) resentenced Brant for malice murder, imposing a sentence of life with the possibility of parole, see *Moore v. State*, 293 Ga. 705 (749 SE2d 660) (2013) (holding that based on *Roper v. Simmons*, 543 U.S. 551 (125 SCt 1183, 161 LE2d 1) (2005), and other considerations, juveniles who were sentenced under the life-without-parole statute in place at the time Brant was sentenced cannot receive a sentence of life without the possibility of parole), disapproved on other

grounds by *Kimbrough v. State*, 300 Ga. 516, 520 n.6 (796 SE2d 694) (2017); (2) corrected the scrivener's error on the 1999 armed robbery sentence, noting that the original sentence was for life with the possibility of parole; and (3) denied a motion filed by Brant to withdraw his guilty plea. For the reasons explained below, we conclude that we must dismiss Brant's appeal based on his waiver of his right to appellate review in his plea contract.

"'Georgia allows a defendant to enter into a negotiated agreement to for[ ]go the right to seek post-conviction relief as a means to serve the interests of the State and the defendant in achieving finality.'" *Hooks v. State*, 284 Ga. 531, 533 (668 SE2d 718) (2008) (quoting *Rush v. State*, 276 Ga. 541, 542 (579 SE2d 726) (2003)), overruled on other grounds by *Williams v. State*, 287 Ga. 192 (695 SE2d 244) (2010). "'[S]o long as the waiver is voluntary, knowing, and intelligent,'" "'a criminal defendant may waive his statutory right to appeal a conviction in exchange for the State's agreement not to seek the death penalty.'" *Hooks*, 284 Ga. at 533-534 (quoting *Rush,* 276 Ga. at 542). See also *Rawles v. Holt*, 304 Ga.

774, 777 (822 SE2d 259) (2018) ("This Court has held that a waiver of the right to appeal in a non-death penalty case does not violate public policy and is constitutional and enforceable."). "'The fact that a waiver of the right to appeal is voluntary, knowing, and intelligent may be shown in two ways.'" *Hooks*, 284 Ga. at 534 (quoting *Rush*, 276 Ga. at 542).

> First, a signed waiver may indicate that the defendant understands the right he is waiving. Second, and more important, detailed questioning of the defendant by the trial court that reveals that he was informed of his right to appeal and that he voluntarily waived that right is sufficient to show the existence of a valid, enforceable waiver.

*Rawles*, 304 Ga. at 777 (quoting *Rush*, 276 Ga. at 542).

Here, Brant was represented by two attorneys when he entered the plea agreement and at his plea hearing, and in his written plea contract, Brant acknowledged that "after consultation and advice from" those attorneys, he "d[id] knowingly, intelligently and voluntarily stipulate and agree" to the appeal waiver. Brant also acknowledged in the written agreement that he was entering "into this contract with full awareness of what [he] [was] doing."

Moreover, the plea hearing transcript shows that both the district attorney and the trial court asked Brant if he understood that he was waiving his rights of appeal under the agreement, and Brant said that he understood. Brant acknowledged that he had consulted with his attorneys about the case, stated that he was satisfied with their services, and affirmed that he was entering the plea voluntarily. The record thus shows that Brant agreed to the appeal waiver knowingly, voluntarily, and intelligently.[1]

Brant nonetheless argues that his plea contract was involuntary because he agreed to the plea contract to avoid the possibility of receiving the death penalty, a sentence for which he was eligible in 1999, but for which he was determined to be ineligible after the Supreme Court's 2005 opinion in *Roper*. See *Roper*, 543 U.S. at 568. We do not agree. The United States Supreme Court and other courts have held that where a defendant is eligible for the

---

[1] We note that Brant is serving the sentences to which he agreed in his written contract, except the sentence for malice murder, which now, after resentencing, is more favorable to him than the sentence for which he bargained.

death penalty under existing law and enters into a plea agreement to avoid the possibility of receiving a sentence of death, his guilty plea is not rendered involuntary by subsequent legal developments that make him ineligible for the death penalty. See, e.g., *Brady v. United States*, 397 U.S. 742, 756-757 (90 SCt 1463, 25 LE2d 747) (1970); *Dingle v. Stevenson*, 840 F3d 171, 175 (4th Cir. 2016). In *Brady*, as here, the defendant was eligible to receive a sentence of death and elected to plead guilty to avoid the death penalty. About a decade later, the United States Supreme Court decided a case making the defendant ineligible for the death penalty, and the defendant argued that his plea had been unconstitutionally coerced by the possibility of the death penalty. See *Brady*, 397 U.S. at 744-746. The Supreme Court rejected that claim, explaining, among other things, that

> [a] defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action. More particularly, absent misrepresentation or other impermissible conduct by state agents, . . . a voluntary plea of guilty intelligently

made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise.

Id. at 757.

The Court further explained that the fact that the defendant did not anticipate the case that made him death ineligible

does not impugn the truth or reliability of his plea. We find no requirement in the Constitution that a defendant must be permitted to disown his solemn admissions in open court that he committed the act with which he is charged simply because it later develops that the State would have had a weaker case than the defendant had thought or that the maximum penalty then assumed applicable has been held inapplicable in subsequent judicial decisions.

Id. at 757. In sum, the Supreme Court acknowledged that the defendant's "plea of guilty may well have been motivated in part by a desire to avoid a possible death penalty," but concluded that it was "convinced that his plea was voluntarily and intelligently made." Id. at 758.

*Dingle* also involved a juvenile who pled guilty to avoid the death penalty. See *Dingle*, 840 F3d at 172-173. The defendant claimed that, because the United States Supreme Court later

invalidated the death penalty for juvenile offenders in *Roper*, his

guilty plea should be ruled invalid.  See *Dingle*, 840 F3d at 172-173.

Relying on *Brady*, the *Dingle* court rejected the defendant's

argument:

> Contracts in general are a bet on the future.  Plea bargains are no different: a classic guilty plea permits a defendant to gain a present benefit in return for the risk that he may have to for[ ]go future favorable legal developments. Dingle received that present benefit — avoiding the death penalty and life without parole — under the law as it existed at the time.  Although *Roper*, in hindsight, altered the calculus underlying Dingle's decision to accept a plea agreement, it does not undermine the voluntariness of his plea.  Some element of pressure exists in every deal, as the tradeoff between present certainty and future uncertainty is emblematic of the process of plea bargaining. *Brady* makes all that exceptionally clear and in following its teachings we find no infirmity in the plea that Dingle entered.

*Dingle*, 840 F3d at 175-176.  See also *United States v. Vela*, 740 F3d

1150, 1152-1154 (7th Cir. 2014) (holding that an appeal waiver was

not rendered invalid by a subsequent change in the law).

For the foregoing reasons, Brant's appeal waiver is valid.  In

this regard, we note that Brant does not now seek to appeal from a

sentence that imposes punishment not authorized by law, nor does

he seek to appeal from a sentence that imposes punishment greater than that for which he bargained.  If either of those circumstances were otherwise, our analysis might be different.  But neither of those circumstances is present, and we dismiss Brant's appeal.

*Appeal dismissed.  All the Justices concur, except Melton, C. J., and Benham, J., who concur in judgment only, and Boggs, J., who is disqualified.*

Decided June 24, 2019.

Murder. Coffee Superior Court. Before Judge DeVane, Senior Judge.

*J. Clayton Culp*, for appellant.

*George E. Barnhill, District Attorney, Ian L. Sansot, Michelle C. McIntire, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General*, for appellee.